In the Matter of the PEOPLE ex rel. JOHN F. DOBSON, Appellant.

The rule that a special statute providing for a particular case and applicable to a particular locality is not repealed or modified by a subsequent statute, general in its terms and application, does not obtain where the intention of the legislature to repeal or modify the special law is clearly manifest.

Accordingly *held,* that chapter 710, Laws of 1892, which authorizes the board of fire commissioners, with the approval of the board of estimate and apportionment, in all cities, the population of which, according to the last census, exceeds nine hundred thousand, to fix the salaries of the members of the fire department, modifies the charter of the city of Brooklyn (§ 6, tit. 13, chap. 583, Laws of 1888), relating to the compensation of officers of its fire department, and it is the duty of the fire commissioner of that city to fix the salaries referred to, as provided in said act.

*In the Matter of the People ex rel. Dobson* (73 Hun, 583), reversed.

(Argued June 3, 1895; decided June 14, 1895.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, made December 1, 1893, which affirmed an order of Special Term denying an application by the relator for a writ of mandamus requiring the fire commissioner of the city of Brooklyn to fix and determine his salary as fireman of the fire department.

The facts, so far as material, are stated in the opinion.

*William P. Pickett* for appellant. This statute being a remedial one and designed to afford relief to a very deserving class of public servants, not being in any way penal in its character or in derogation of the common law, should receive a liberal construction for the purpose of advancing the remedy intended by the act. There can be no question whatever that the relator is within the reason of the statute. (Laws of 1892, chap. 61, §§ 306, 454, 677, 710 ; Laws of 1882, chap. 410, § 442 ; Laws of 1888, chap. 583, § 35 ; *Mangam* v. *City of Brooklyn,* 98 N. Y. 585 ; *In re N. Y. E. R. R. Co.,* 70 N. Y. 349 ; Laws of 1893, chap. 314, §§ 332, 391, 408, 434 ; Laws

of 1887, chap. 218, § 582.) The remedy of mandamus is the only one which the relator can obtain. (*Dolan* v. *City of Brooklyn*, 55 Hun, 448; 129 N. Y. 646.)

*Albert G. McDonald* for respondents. It is a familiar rule of statutory construction governing the present case that a special statute providing for a particular case or applicable to a particular locality is not repealed by a statute general in its terms and application unless the intent of the legislature to repeal or alter the special law is manifest, and even although the terms of the general act would, taken strictly and but for the special law, include the case or cases provided for by the special law, and that general acts are not held to repeal the provisions of charters granted to municipal corporations. The fact that the general act contains a clause repealing " all acts, etc., inconsistent, etc.," does not weaken this general rule of construction. (*B. C. Assn.* v. *City of Buffalo*, 118 N. Y. 61; Endlich on Stat. § 228; *McKenna* v. *Edmundstone*, 91 N. Y. 231; *Van Denbergh* v. *Village of Greenbush*, 66 id. 1; *In re Evergreens*, 47 id. 216; *People ex rel.* v. *Quigg*, 59 id. 88; *People ex rel.* v. *Palmer*, 52 id. 88; *Whipple* v. *Christian*, 80 id. 523; *People ex rel.* v. *Supervisors*, 40 Hun, 353; *Aldinger* v. *Pugh*, 57 id. 181.)

O'Brien, J. The relator is the foreman of one of the companies of the fire department of Brooklyn. This proceeding was instituted to compel the defendant, the Fire Commissioner, to fix his salary at a sum not less than $1,800 per year. On the 29th of June, 1892, the commissioner acted and fixed the salary at $1,700. The relator claims that this was $100 less than the minimum prescribed by the statute. The only question is whether chapter 710 of the Laws of 1892 applies to the case. That act reads as follows:

" The board of fire commissioners in all cities of this state having, according to the last census, a population exceeding nine hundred thousand, are hereby authorized and empowered with the approval of the board of estimate and apportionment,

to fix and determine, from time to time, the salary of the
members of the fire department; the chief of the department
whose salary shall not be more than six thousand dollars nor
less than five thousand dollars and the two deputy chiefs
whose salary shall not be more than forty-five hundred dol-
lars nor less than thirty-five hundred dollars and the chiefs of
battalion whose salary shall not be less than twenty-seven hun-
dred and fifty nor more than three thousand five hundred dol-
lars; and to captain or foreman of the department whose sal-
ary shall not be more than twenty-five hundred dollars nor
less than eighteen hundred dollars and to assistant foreman or
assistant captain whose salary shall not be more than eighteen
hundred dollars nor less than fifteen hundred dollars.

" The pay or compensation mentioned in the foregoing sec-
tion shall be paid monthly to each person entitled thereto, sub-
ject to such deduction for and on account of lost sick time,
disability, absence or fines, as the said board may by rules and
regulations from time to time prescribe and adopt.

" All acts and parts of acts inconsistent with this act are
hereby repealed.

" This act shall take effect immediately."

It became a law on the 20th of May, 1892. The compensa-
tion of officers of the fire department of Brooklyn has here-
tofore been regulated by the provisions of the charter of that
city (Laws of 1888, chap. 583, title 13, § 6). The courts
below have held that these provisions still remain unaffected
by the later statute above quoted. This result was reached
by the application of a principle well settled by a class of
cases of which *McKenna* v. *Edmundstone* (91 N. Y. 231) is a
leading one in which the rule is enforced that a special stat-
ute providing for a particular case and applicable to a particu-
lar locality is not repealed or modified by a subsequent statute
general in its terms and application, although the terms of the
general act would, when taken strictly and but for the special
law, include the case provided for by the latter, and that gen-
eral acts should be construed as not repealing or affecting the
provisions of charters of municipal corporations. This rule,

however, does not obtain where the intention of the legislature to repeal or modify the special law or the charter is clear and manifest. When, by any reasonable or fair construction the two enactments can be made to work together, and each can be made to accomplish a different and independent result, a special or local statute will not be affected by a subsequent general law relating to the same general subject. But we think that it is too clear that the legislature intended the act in question to apply to Brooklyn for the application of the principle. To hold otherwise, it would be necessary to disregard the language and general scope of the act as well as the facts notoriously existing when the act was introduced and passed. The title declares that the law was to apply to the uniformed firemen in all the cities of the state having a population by the last census of more than nine hundred thousand. Such, also, is the language used in the body of the act. The last census referred to was that taken under the direction of the very legislature that enacted the law, and which was completed in February previous, nearly three months prior to its passage. This census showed that Brooklyn had then a population of more than nine hundred and fifty-seven thousand, a fact which, it must be assumed, was perfectly well known to all the members of the legislature. It is impossible to say, under these circumstances, that the legislation was intended for the city of New York alone. That city had by the same census a population of more than eighteen hundred thousand. It would be contrary to all reason and every probability that the legislature intended to include that city alone in the term "cities of over nine hundred thousand population." It is clear, from the language employed and from the result of the census which had then been made public, that it was the intention that the act should apply to Brooklyn also. It is said that the law could not apply to Brooklyn for the reason that the several boards and officers mentioned and designated in it are peculiar to the city of New York, and do not exist in the other city either as a part of its fire department or its municipal government. But it appears that in the latter city

there are individuals and boards in the fire department and in the city government, who, under different names, exercise the same, or substantially the same or similar, powers, and are charged with similar duties as those who are designated in the act perform in the former.

The general law of statutory construction (Ch. 677, Laws 1892, § 18) provides that where reference is made to special officers of a municipal corporation, or to a board of such officers, it shall be deemed to refer to a single officer holding such office when but one person is chosen to fill it in pursuance of law.

So we think that the statute in question operated to modify the provisions of the city charter so far as to confer upon the fire commissioner power to fix the relator's salary, from time to time, at a sum not less than $1,800, and it became the duty of that officer to act under the new law when called upon by the relator to do so, or, at least, when fixing the salary. It is necessary, however, that the action of the fire commissioner shall be approved by the board of estimate, the financial body which, in Brooklyn, exercises the same or similar powers and performs substantially the same duties as the board of estimate and apportionment in New York. It is probably not very material whether such approval precedes or follows the action of the fire commissioner. It is certainly competent for the latter officer to act in the first instance and then submit his action to the board of estimate for its approval. It may be that it is discretionary with that board to approve the actions of the commissioner or to refuse. But we cannot say in this case that they will refuse, and since it appears that the commissioner has declined to act under the statute at all the order of the General Term and that of the Special Term should be reversed and the application for the writ of mandamus granted, with costs in all courts to the relator.

All concur.

Ordered accordingly.