The Pratt Institute, Appellant, *v.* The City of New York, Respondent.

1. Tax — Implied Repeal of Exemption Specially Accorded to Educational Corporation. An educational corporation is not exempt from local taxation upon its leased real estate, the rents of which are devoted exclusively to corporate purposes, although its charter, granted by special act in 1887, expressly exempted such real estate from local taxation; since the General Tax Law (L. 1896, ch. 908, § 4, subd. 7, as amd.), exempting so much of the real estate of educational institutions as is used exclusively for carrying out thereupon one or more of the corporate purposes, impliedly repeals the provisions of the special act relating to such exemption.

2. Repeal Not an Impairment of the Obligation of a Contract. The repeal of such exemption cannot be regarded as violating those provisions of the Federal Constitution prohibiting legislation impairing the obligation of contracts, since the Constitutions and Revised Statutes of the State of New York (Consts. 1846, 1895, art. 8, § 1; 1 R. S. 600, § 8) provide for the alteration or repeal of any act, general or special, creating a corporation, and those provisions must be read into any subsequent charter, thus preventing it from becoming irrevocable.

*Pratt Institute* v. *City of New York*, 99 App. Div. 525), affirmed.

(Argued October 23, 1905; decided November 21, 1905.)

Appeal from a judgment, entered February 9, 1905, upon an order of the Appellate Division of the Supreme Court in the second judicial department, affirming a final judgment entered upon an order of Special Term sustaining a demurrer to and directing a dismissal of the complaint.

The object of this action was to set aside an assessment as a cloud upon the title to certain real estate belonging to the plaintiff in the city of Brooklyn, on the ground that such property is exempt from taxation except for state purposes.

The case made by the complaint was in substance as follows: The Pratt Institute is an educational institution organized by special act and located in the city of Brooklyn. (L. 1887, ch. 398.) Its general object is the instruction of persons of either sex in such branches of useful and practical knowledge as are not generally taught in the public or private

schools. Its special object is to afford opportunities for persons " to become acquainted with what is best in manufactured materials, fabrics, wares and arts, and so to educate the eye and hand in the practical use of tools and machinery that students may be encouraged to emulate the best models and be enabled to accomplish the best possible work in one or more branches of art or manufacture, either useful or ornamental." It maintains a free circulating library of art and science, and also a reading room for general use accessible at all reasonable hours. " All income from tuition and all revenues of every kind " are " devoted solely to the purposes of the Institute."

Section ten of its charter is as follows : " For the uses and purposes aforesaid the said corporation is authorized to take by grant, devise, bequest, gift or otherwise, and to hold, lease, sell and convey any real and personal property, and to erect all necessary and suitable buildings, and any property in the city of Brooklyn actually occupied and used for the purposes aforesaid, or the revenues of which are exclusively devoted to the purpose aforesaid, shall not be subject to local taxation. * * * "

After its incorporation the institute was generously endowed by the founder Mr. Charles Pratt, who conveyed to it a large amount of real estate, and also gave it personal property of substantial value. Other persons have since given it property, both real and personal, and by means of its endowment it has erected suitable and commodious buildings in Brooklyn, wherein the various branches of its work are carried on. It is thus " engaged in performing a work of public utility for the benefit of the citizens of the State of New York."

In 1902 the plaintiff owned five lots of land in the city of Brooklyn, each with a dwelling house thereon. This property was not used " for carrying out *thereupon* one or more " of the objects of the corporation, but it was leased and the net rents used exclusively in its educational work. During the year aforesaid a tax was assessed upon the said real estate in due form of law, amounting upon the valuation of $18,400 to the

sum of $433.04. Of this amount only $19.88 was for state purposes, which, as the plaintiff alleged, it was ready and willing to pay, but the defendant had refused to receive it. The assessment became an apparent lien upon the property affected and constituted a cloud upon the title of the plaintiff which it sought to remove by this action upon the ground that all its real estate in the city of Brooklyn, whether actually occupied and used for its corporate purposes or not, is exempt from local taxation, both city and county.

The facts thus stated were alleged in the complaint, to which the defendant demurred upon the ground that the allegations were not sufficient to constitute a cause of action. The demurrer was sustained at Special Term and as the plaintiff did not ask leave to amend, final judgment was entered dismissing the complaint, and from the judgment of affirmance rendered by the Appellate Division this appeal is brought.

*John G. Milburn* and *Edmund L. Baylies* for appellant. Section 10, chapter 398, Laws of 1887, exempted the real property of the appellant in the city of Brooklyn occupied by it, or the revenues of which are exclusively devoted to its corporate purposes, from all taxation except for state purposes. (*People ex rel. Pratt Institute* v. *Board of Assessors,* 141 N. Y. 476.) The exemption of the appellant's property in the city of Brooklyn from local taxation conferred by section 10 of the act of 1887 has not been repealed by implication. (*People ex rel. State* v. *Quigg,* 69 N. Y. 83; *Hawkins* v. *Mayor,* 64 N. Y. 18; *Wallace* v. *Swinton,* 64 N. Y. 188; *Ross* v. *Wigg,* 36 Hun, 107; *B. C. Assn.* v. *City of Buffalo,* 118 N. Y. 61; *Parker* v. *E., etc., R. R. Co.,* 165 N. Y. 274; *Casterton* v. *Town of Vienna,* 163 N. Y. 368.) As construed by the courts below the Tax Law is, in its application to the charter of the appellant, repugnant to section 10 of article 1 of the Federal Constitution as it would impair the obligation of a contract. (*People ex rel. Trustees* v. *Dohling,* 6 App. Div. 86; *People* v. *O'Brien,* 111 N. Y. 48; *People ex rel. Pratt Institute* v. *Board of Assessors,* 141 N. Y. 476;

*Stearns* v. *Minnesota*, 179 U. S. 223 ; *People* v. *O'Brien*, 111 U. S. 51.)

John J. Delany, Corporation Counsel (George S. Coleman and E. Crosby Kindleberger of counsel), for respondent. The property of plaintiff leased for revenue was not exempt from local taxation under the provisions of the Tax Law. (L. 1896, ch. 908, § 4, subd. 7 ; *People ex rel. Y. M. Assn.* v. *Sayles*, 32 App. Div 197 ; 157 N. Y. 677 ; *People ex rel. Catholic Union* v. *Sayles*, 32 App. Div. 203 ; 157 N. Y. 679.) The Tax Law repealed the provisions of special acts relating to exemption from taxation of real and personal property. (*Heckman* v. *Pinkney*, 81 N. Y. 211 ; *People* v. *Jaehne*, 103 N. Y. 182 ; *Matter of N. Y. Inst.*, 121 N. Y. 234 ; *Matter of Dobson*, 146 N. Y. 357 ; *People ex rel. N. S. Bank* v. *Peck*, 157 N. Y. 51 ; *People ex rel. Fleming* v. *Dalton*, 158 N. Y. 175 ; *Barker* v. *Town of Floyd*, 61 App. Div. 92 ; *Matter of Troy Press Co.*, 94 App. Div. 514 ; *The Paquete Habana*, 175 U. S. 677 ; *People ex rel. Catholic Union* v. *Sayles*, 32 App. Div. 203 ; *Matter of Huntington*, 168 N. Y. 399.) The charter of the Pratt Institute was subject to repeal by the legislature, and its implied repeal by the Tax Law did not violate constitutional provisions. (Cooley on Taxn. [3d ed.] 111, 114, 115 ; Black on Tax Titles [2d ed.], §§ 53–56 ; *Welch* v. *Cook*, 97 U. S. 541 ; *Greenwood* v. *Railroad*, 105 U. S. 13 ; *L. W. Co.* v. *Clarke*, 143 U. S. 1 ; *C. S. Bank* v. *Owensboro*, 173 U. S. 636 ; *Covington* v. *Kentucky*, 173 U. S. 231 ; *Stearns* v. *Minnesota*, 179 U. S. 259 ; *Stanislaus County* v. *S. J., etc., Co.*, 192 U. S. 201.)

VANN, J. The Pratt Institute ·is a noble charity, carrying on a work of great usefulness, strictly within the lines of its charter and in accordance with the beneficent purpose of its founder. To the average mind such a charity appeals strongly for relief from the usual burdens resting upon property, because, as it may well be claimed, it discharges its duty to the public by devoting all that it has to the public wel-

fare. It is, however, for the legislature to decide what property should be taxed and what should be exempt, and considerations which might control that department of government can have no force with the courts. It is our duty to enforce the command of the law without regard to what we may think of its policy.

The subject of taxation has been a great embarrassment to legislative bodies throughout the history of the world. Special interests clash with general interests and seek relief, wholly or in part, from the public burden which is essential to the protection of property and the preservation of order. Claims for exemption multiply and when the legislature yields to the pressure of special interests, the precedent breeds a multitude of special statutes and brings confusion into the law. Such was the situation that confronted the legislature of 1889, which set out to meet the difficulty by an act authorizing the appointment of commissioners to revise and consolidate the statutes relating to different subjects and among them to " the assessment and collection of taxes and exemption of property from taxation throughout the State." (L. 1889, ch. 289.) The first bill reported did not become a law and another effort was made in 1892 through an act providing for the appointment of two counsel to " examine the laws of this and other States relating to taxation and to report to the next legislature" the result of their investigations " with recommendations as to legislation relating to assessment and taxation in this State." (L. 1892, ch. 660.) Counsel were appointed accordingly but the bill reported by them was not passed. Finally the commissioners of statutory revision reported in substance the present Tax Law, which went into effect on the 15th of June, 1896. (L. 1396, ch. 908.) In their report to the legislature they stated that they had " gone over the entire field of statutory law relating to taxation " and without intending to effect radical changes, they had been compelled to make various alterations in order to " eliminate inconsistencies and reduce the subject to a harmonious and systematic whole." They further said that there had been

no revision of the tax laws since the Revised Statutes of 1828 and that about one hundred supplemental acts had since been passed, including many which increased " the exemptions of property from taxation."

Having thus stated the history and purpose of the Tax Law, we will next examine the provisions thereof relating to exemption and compare them with the special exemption in the plaintiff's charter in order to determine whether the latter was impliedly repealed by the former.

Section three provides that "all real property within this State, and all personal property situated or owned within this State, is taxable unless exempt from taxation by law."

The next section makes liberal provision for exemption from taxation, but we are now concerned only with the seventh paragraph thereof, which provides that " the real property of a corporation or association organized exclusively " for specific charitable, religious and educational purposes, and " used exclusively for carrying out *thereupon* one or more of such purposes; and the personal property of any such corporation shall be exempt from taxation."

Thus the legislature made all property taxable, except such as is exempt, and in declaring what is exempt it covered the case of educational institutions, such as the plaintiff, exempting all their personal property absolutely, and so much of their real estate as is used exclusively for carrying out thereon one or more of the corporate purposes, but not exempting real estate held as an investment only, even if the income was used for a corporate purpose. A general rule of taxation and exemption was laid down after the revisers, as they expressly declared, had gone over the entire field of statutory law relating to the subject. It was the apparent purpose of this legislation to define the status with reference to taxation or exemption from taxation of every parcel of real property and every article of personal property in the state. It furnished a plain and simple rule for all assessors by which they could at once determine whether property within their district was subject to taxation or not, without searching the statutes for

nearly seventy years for special exemptions. It is a codifying act, designed to reduce all statutes relating to taxation into a complete and harmonious system. A codifying act is presumed to exhaust the subject to which it relates, unless a different intention appears on the face of the statute, or is an irresistible inference from special circumstances. The new enactment is substituted in the place of all statutes previously existing and becomes the sole rule of action.

As an author, who is held in high esteem by the courts, has said : " Revision of statutes implies a re-examination of them. The word is applied to a restatement of the law in a corrected or improved form. The restatement may be with or without material change. A revision is intended to take the place of the law as previously formulated. By adopting it the legislature say the same thing, in effect, as when a particular section is amended by the words ' so as to read as follows.' The revision is a substitute ; it displaces and repeals the former law as it stood relating to the subjects within its purview. * * * Will a revision repeal by implication previous statutes on the same subject, though there be no repugnance ? The authorities seem to answer emphatically, Yes. * * * In all cases of repeal by revision the absence of express words of repeal is unimportant. The purport of the numerous cases cited is that where a statute is revised, or a series of acts on the same subject are revised and consolidated into one, all parts and provisions of the former act or acts, that are omitted from the revised act, are repealed." (Sutherland on Statutory Construction [Lewis' edition], §§ 269, 270.)

In *King* v. *Cornell* (106 U. S. 395) Chief Justice Waite declared that : " While repeals by implication are not favored, it is well settled that where two acts are not in all respects repugnant, if the later act covers the whole subject of the earlier and embraces new provisions which plainly show that it was intended as a substitute for the first, it will operate as a repeal." (Citing *U. S.* v. *Tynen*, 11 Wall. 88.)

The same court had previously said : " It was the intention of Congress, by the latter statute, to revise the entire matter

to which they both had reference, to make such changes in the latter as it stood as they thought best, and to substitute their will in that regard entirely for the old law upon the subject. We are of the opinion that it was their intention to make a new law so far as the present law differed from the former, and that the new law embracing all that was intended to be preserved of the old, omitting what was not so intended, became complete in itself and repealed all other laws on the subject embraced within it. The authorities on this subject are clear and uniform." (*Murdock* v. *City of Memphis,* 20 Wall. 590, 617.) The last utterance of that high court upon the subject, so far as we are advised, is as follows : " It is settled that, without express words of repeal, a previous statute will be held to be modified by a subsequent one, if the latter was plainly intended to cover the whole subject embraced by both and to prescribe the only rules in respect to that subject that are to govern." (*Tracey* v. *Tuffly,* 134 U. S. 206, 223.)

" A subsequent statute, revising the whole subject-matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must, on the principles of law as well as in reason and common sense, operate to repeal the former." (*Bartlet* v. *King,* 12 Mass. 537, 545.)

" If a revising statute embraces all the provisions of antecedent laws on the same subject and reduces them to one system, such statute virtually repeals the statutes revised without any expression to that effect, and though there is no repugnancy between them." (*State* v. *Wilson,* 43 N. II. 415, 419. See, also, *People ex rel. Ross* v. *City of Brooklyn,* 69 N. Y. 605 ; *Excelsior Petroleum Co.* v. *Embury,* 67 Barb. 261, 264 ; *Dexter & Limerick Plank Road Co.* v. *Allen,* 16 Barb. 15 ; Sedgwick on Statute Law, 124, 125 ; Dwarris on Statutes, 674.)

The latest expression of opinion upon the question is in a decision by ourselves, speaking through our late associate, of revered memory, Judge LANDON (*Matter of Huntington,* 168

N. Y. 399).   We then had under consideration the Tax Law now before us and two special acts, one incorporating "The Roosevelt Hospital in the City of New York" and the other for the relief of "The Children's Aid Society of the City of New York."   (L. 1864, ch. 4; L. 1868, ch. 468.)   The earlier act strongly resembled that which incorporated the plaintiff, and, after creating the corporation, it enacted that all its property, real and personal, should be exempt from taxation.   The later act dealt with a corporation already in existence by relieving its necessities through a generous appropriation of money and at the same time exempting all its property from taxation.   Both corporations had the same noble purpose of benefiting mankind as the plaintiff, not in the same way by educating in special lines, but, in the case of the hospital, by relieving those suffering from wounds and disease and, in the case of the Children's Aid Society, by providing a lodging house for friendless and homeless boys in the city of New York.

Judge Landon, after referring to the history of the Tax Law and the report of the commissioners who prepared it, held that it was such a revision and substitute for all former statutes, general and special, upon the subject of exemption from taxation, as to supersede and repeal them by implication, and that it thus repealed among others the provisions of the special acts exempting the property of the two corporations mentioned.   He alluded to the constitutional amendment of 1875, which provided that the legislature should not pass a private or local bill "granting to any private corporation, association or individual any exclusive privilege, immunity or franchise whatever," but authorizing the passage of general laws providing for such cases and others.   He declared that the Tax Law "was evidently intended to harmonize with the constitutional and legislative policy thus indicated.   Article twelve of the Tax Law contains a schedule of one hundred and fifty-three acts and parts of acts which are expressly repealed by the Tax Law.   This schedule does not mention the special acts exempting either the Roosevelt Hospital or

the Children's Aid Society, or, so far as our examination extends, any act in which a corporation designated by name is exempted." After quoting subdivision seven of section four of the general statute, he continued : " With such a general statute the corporations and associations enumerated in the subdivision need no special statute unless, as is not here suggested, they used their property for purposes foreign to those for which they were organized. Unless they do so use it, there is no question of repugnancy or inconsistency between the general and private statute. Conceding a repugnancy to the extent that a private enterprise, masked under charitable privilege, should not be exempt, and we have a stronger reason for the repeal by implication of the exemptions which the special acts granted in this respect. The greater act seems to include all the less. Nor is there any suggestion that the private statute has some special fitness to the peculiar condition of any of these corporations designated by name in such statute which the general statute does not embrace. * * * In our opinion the legislature intended by the Tax Law of 1896 to provide, pursuant to the Constitution, for this particular class of immunities from taxation, and to cover, as the act constituting the commissioners of statutory revision required, the whole field of ' the collection and assessment of taxes and exemption of property from taxation . throughout the State,' so far, at least, as their view of the subject extended. * * * The general rule of the liability to taxation of all property within the State was preserved, and the exemptions classified in such comprehensive phrase as to make all prior private and special exemptions unnecessary so far as the general act conferred the same exemptions as the special and private acts, and repugnant and inconsistent so far as the special and private acts conferred greater immunities and exemptions than the general act. If these views are correct, it was not necessary to search out the many private statutes conferring exemptions and to enumerate them in the schedule of repealed statutes. In the construction of a statute of so much moment, enacted as the result of long

experience, much discussion and great consideration, the rule that effect must be given to the intent of the legislature, if the language of the enactment will permit, is of commanding force. (Citing *Matter of Dobson,* 146 N. Y. 357; *People ex rel. Fleming* v. *Dalton,* 158 N. Y. 175; *Matter of Thrall,* 157 N. Y. 46; *People ex rel. Catholic Union* v. *Sayles,* 32 App. Div. 203; affirmed on opinion below, 157 N. Y. 679.)"

In *People ex rel. Catholic Union* v. *Sayles* (*supra*) we adopted the opinion of the Appellate Division which was also written by Judge LANDON. In that case a corporation organized exclusively for benevolent purposes and owning real estate, not directly used for any corporate purpose, which had been taxed, claimed exemption under a special law, but the claim was overruled upon two grounds, *first,* that the special act had been repealed by another act not now important, and, *second,* because it was repealed by the General Tax Law. Upon the second point Judge LANDON said: "We also think that it was repealed by the General Tax Law; that the intention of the legislature was influenced by the mass of special legislation upon the subject of exemptions and by the need of a uniform system and that, as may be gathered from the statute itself, it was to establish a system which should place exemptions of the real property of charitable corporations upon a basis of clearly defined equity, free from the unsystematic partialities of special favoritism, and free from the danger of hazarding their usefulness by embarking in outside enterprises. We think the statute apt in its provisions to accomplish such a result."

Two decisions, each directly in point, made within the last ten years ought to settle the question, but the appellant claims that they have both been overruled by a later case decided without an opinion. (*People ex rel. Cooper Union* v. *Wells,* 180 N. Y. 537.) When a decision is made upon full consideration, and judgment is rendered upon well-defined grounds, it cannot be regarded as overruled by a subsequent case in which no opinion was written and no ground of action stated. We do not overrule important authorities *sub silentio*

and it was not our intention- to overrule either of the cases named. No such suggestion was made at our consultation table, and no such result follows from the *Cooper Union* case, as it is clearly distinguishable.

We are asked to distinguish the *Huntington* case from that of the plaintiff, because. the statute incorporating the latter and conferring the special exemption "has some special fitness to the peculiar condition", of the Pratt Institute. This is impossible upon any logical ground, for the argument founded on special fitness applies with no more force to the plaintiff than it did to the Roosevelt Hospital or the Children's Aid Society.

It is argued that the Tax Law, if so construed as to impliedly repeal the exemption clause in the plaintiff's charter, violates the Federal Constitution by impairing the obligation of a contract. This argument is answered by that clause of the Constitution of 1846, and continued in our present Constitution, which provides that "all general laws and special acts passed" for the creation of corporations "may be altered from time to time or repealed." (Const. of 1846, art. 8, § 1; Const. of 1895, art. 8, § 1.) The Revised Statutes also provided that "the charter of every corporation, that shall hereafter be granted by the legislature, shall be subject to alteration, suspension and repeal, in the discretion of the legislature." (1 R. S. 600, § 8.)

Thus, before the plaintiff received its charter from the legislature, the right to alter or repeal it had been expressly reserved by that body and irrevocably reserved by the Constitution. The reservation became a part of the charter of every corporation subsequently organized, whether under a general act or by special statute.

An argument like that now advanced by the appellant in this case was made by the appellant in a case recently before the Supreme Court of the United States, and this is the answer that it received : "When the proposition relied upon is plainly stated and its import clearly apprehended, no reasoning is required to demonstrate its unsoundness. In effect, it

is that the contract was not subject to repeal, although the contract itself in express terms declares that it should be so subject at the will of the legislative authority. The elementary rule is that if at the time a corporation is chartered and given either a commutation or exemption from taxation, there exists a general statute reserving the legislative power to repeal, alter or amend, the exemption or commutation from taxation may be revoked without impairing the obligations of a contract, because the reserved power deprives the contract of its irrevocable character and submits it to legislative control. The foundation of this rule is that a general statute reserving the power to repeal, alter or amend, is by implication read into a subsequent charter and prevents it from becoming irrevocable." (*Citizens' Savings Bank* v. *Owensboro,* 173 U. S. 636, 644.)

The order appealed from should be affirmed, with costs.

BARTLETT and WERNER, JJ., concur; CULLEN, Ch. J., concurs in the opinion of VANN, J., on the constitutional question, and concurs in result on the ground that the decision in *Matter of Huntington* (168 N. Y. 399) is controlling; GRAY and HAIGHT, JJ., dissent; O'BRIEN, J., absent.

Order affirmed.