PEOPLE ex rel. HENRY P. BURGARD CO. v. CITY OF BUFFALO.

(Supreme Court, Special Term; Erie County.   September 14, 1911.)

MUNICIPAL CORPORATIONS (§ 327*)—CONTRACTS—CONTRACTORS' BONDS—REPEAL OF STATUTE.

 Buffalo City Charter (Laws 1891, c. 105) § 478, provides for the execution of bonds running to the city, and Laws 1899, c. 577, empowered the common council to provide that bonds given to the city for the performance of any contract should provide that the other party to the contract should pay for all materials used and services rendered in the execution of such contract, and that the subcontractor might sue the obligors on such bond. Laws 1911, c. 450, § 62, amending the lien law as to the protection of persons furnishing materials and labor for public works, which made no reference to the charter of Buffalo, sought to effect a change in the charter provision as to sureties by requiring a surety company as surety, instead of individual sureties, upon all bonds given by contractors under municipal contracts.  *Held,* that there was no manifest intent to repeal the charter provisions as to sureties, and that a contractor's bond with individual sureties, acceptable to the mayor as provided by charter, was sufficient.

 [Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 327.*]

Action by the People, on the relation of the Henry P. Burgard Company, for mandamus requiring the City of Buffalo to accept relator's bond with individual sureties.  Peremptory writ issued.

Eugene L. Falk, for plaintiff.
Clark H. Hammond, for respondent.

POOLEY, J.  Application for writ of mandamus requiring the defendant to accept relator's bond with individual sureties.

The relator was a bidder for paving part of Oak street, Buffalo, and his bid was reported to the common council January 9, 1911. The assessment therefor was ordered February 6, 1911, and on July 24, 1911, a resolution was adopted by the board of aldermen and duly approved, directing the commissioner of public works to enter into a contract with the relator for the work, and pursuant thereto the contract is about to be executed.  A bond is required for the faithful performance of the work, and the relator has presented to the mayor a bond with individual sureties satisfactory to the mayor as to responsibility, but approval  is withheld, owing to provisions of chapter 450, Laws 1911, which became a law June 26, 1911, entitled "An act to amend the lien law, in relation to the protection of persons furnishing materials and labor for the construction or repair of public buildings or other public works."  Section 62 provides as follows:

"Public contracts; laborers and materialmen to be secured.   Whenever, after this article takes effect, any person enters into a written contract with the state or with any board, commission or department thereof, or with any municipal corporation, for the construction of any public building, or for the prosecution and completion of any public work, or for repairs upon any public building or public work, he shall be required before commencing such work to execute a bond with a surety company authorized to do business in the state of New York as surety, in an amount not less than one-third the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

contract price for such work, conditioned for the faithful performance of the contract, and also that the contractor shall promptly make payment of the sums due all persons supplying labor and materials in the prosecution of the work provided for in such contract."

The charter of the city of Buffalo provides a comprehensive system concerning contracts entered into with the city, covering every detail from the original notice of intention to the final payment for the completed work, and fully providing for the protection of subcontracts for labor or materials furnished, and requiring the contractor to furnish a bond therefor, to be approved by the mayor and his approval to be indorsed thereon.

Section 478 of the original charter (Laws 1891, c. 105) provides in every detail for the execution, acknowledgment, and qualification of sureties; and the only amendment to this section is that of chapter 577 of the Laws of 1899, which does not change the original other than by adding the following:

"The common council shall have power to provide by ordinance that every bond given for the performance of any contract made by the city shall contain a clause that the person, copartnership, association, or corporation entering into such contract with the city will pay for all materials used and services rendered in the execution of such contract."

And further providing that the subcontractors may maintain an action against the obligors in such bond, provided the action is brought within one year after the cause of action accrues.

The other provisions of chapter 450, Laws 1911, are somewhat similar to the charter provisions above referred to, so that practically the important change sought to be effected, so far as the city of Buffalo is concerned, is the requirement of a surety company as surety instead of individual sureties upon all bonds given by contractors in connection with municipal contracts. The other features are quite as complete and effective in the city charter as in the new provisions in this amendment of the lien law, and it does not appear but that the city, the contractors, and the subcontractors are fully and adequately protected under the provisions of the charter.

[1] The question, therefore, presented here is whether or not the legislation amending the lien law supersedes and by implication repeals the charter provisions relative to the bond to be given by the contractor. There is no reference to the charter of the city of Buffalo either in the title or text of this latter enactment, and we are left to infer or imply the intention of the Legislature in enacting a law which may or may not affect the charter. The repeal of a statute by implication is not favored, and is only permitted when it is manifest that it was the intention of the Legislature to repeal. People v. Jaehne, 103 N. Y. 182, 8 N. E. 374. This case involved the question whether the provisions of the charter of New York City in reference to bribery was repealed by a later general statute on the same subject. Judge Andrews, writing the prevailing opinion, says:

"Whether a subsequent statute repeals a prior one in the absence of express words depends upon the intention of the Legislature, and one of the tests frequently resorted to to ascertain whether there is a repeal by implication is to inquire whether the special and general acts may both be repealed

without involving repugnancy of rights or remedies. In some cases the question has been solved by holding that the general act was intended to declare a general rule governing cases not already provided for, and that a prior special statute on the same subject, operating upon a single person or class of persons, or within a limited territory, should be treated as if specially excepted from the operation of the general law. It will be found I think on examining the cases in which the courts have held that a special law was not repealed by a subsequent general law on the same subject, that they are as a general rule cases where the Legislature was not dealing directly with the subject of the prior law, and it was not in mind of the Legislature when the general law was enacted, or where the special law was part of a system of local administration, or where it was possible to assign a reasonable motive for retaining the special and peculiar provisions of the special act, notwithstanding the enactment of a subsequent general rule covering the same subject." Van Denburgh v. Village of Greenbush, 66 N. Y. 1.

This case involved the question whether the special lien law of Rensselaer county was superseded by the later general lien law. Judge Earl, writing for the court, says:

"It is claimed on the part of the appellants that the effect was to repeal the law of 1865 and to bring Rensselaer county again under the law of 1854. It is a question of legislative intent. By the act of 1858 the Legislature placed that county under the law of 1854, and there it remained until 1865, when a special law was passed, with peculiar provisions applicable to that county only. Can it be supposed that the Legislature meant by the act of 1869 to restore in its application to that county the law of 1854, which had once been repealed as to that county, without any special repeal of the law of 1865? We think not. It is a rule of construction that a special statute providing for a particular case or applicable to a particular locality is not repealed by a statute general in its terms and application, unless the intention of the Legislature to repeal or alter the special law is manifest, although the terms of the general act would be taken strictly, and but for the special law include the case or cases provided for by it. Foster's Case, 11 Coke, 63,. 64; In the Matter of the Evergreens, 47 N. Y. 216; Matter of Com. of Central Park, 50 N. Y. 493; Canal Co. v. Railroad Co., 4 Gill & J. (Md.) 6;. Smith's Stat. and Con. Law. 905." McKenna v. Edmundstone, 91 N. Y. 231..

This involves mechanic's lien, and holds that the special act is not abrogated by later general statute.

Judge Andrews, writing for the court, says:

"It is well settled that a special and local statute, providing for a particular case or class of cases, is not repealed by a subsequent statute, general in its terms, provisions, and application, unless the intent to repeal or alter is manifest, although the terms of the general act are broad enough to include the cases embraced in the special law. Matter of the Commissioners of Central Park, 50 N. Y. 493. This is but the application of the larger rule that a statute is not to be deemed repealed by implication by a subsequent act upon the same subject, unless the two are manifestly inconsistent with,. and repugnant to, each other, or unless a clear intention is disclosed on the face of the later statute to repeal the former one. Bowen v. Lease, 5 Hill.. 225. There was no express repeal of the statute of 1875 in the statute of 1880, and, if the former statute was repealed by the later one, it must be upon the ground that the two cannot consistently stand together, in which case a repeal by implication is necessarily effected. The statute of 1875 related exclusively to the city and county of New York. The statute of 1880 relates to the cities of the state; and, while the city of New York, in the absence of any other statute upon the subject of mechanic's lien, would be deemed included within its purview, that alone is not sufficient to indicate an intention on the part of the Legislature to repeal the act of 1875. It was held by this court in Van Denburgh v. Village of Greenbush, 66 N. Y. 1, that chapter 558, Laws 1869, which amended the lien law of 1854, applicable to.

certain counties in the state, by extending its provisions to all counties except Erie, Kings, Queens, New York, and Onondaga, did not operate as a repeal of chapter 778, Laws 1865 (published in Laws 1866, p. 9), which enacted a special lien law applicable to the county of Rensselaer. And in Whipple v. Christian, 80 N. Y. 523, it was held that the lien law of 1844 (chapter 305) applicable to all the cities in the state except New York, and certain specified villages, including Canandaigua, was not repealed as to that village by chapter 204, Laws 1858, which extended the lien law of 1854 to all the counties of the state except New York and Erie. The statute of 1880 was a general statute within the rule we are considering, although it applies only to cities, and not to the whole state. A statute affecting all males or all females, or all infants, would plainly be a general one, and on the same principle an act applicable to all cities is general, in contradistinction to a statute applicable to one city only. See In re Evergreens, 47 N. Y. 216."

This proposition is presented also in People ex rel. Leet v. Keeler, 157 N. Y. 90, 51 N. E. 431; Buffalo Cemetery v. Buffalo, 118 N. Y. 61, 22 N. E. 962; Parker v. Elmira C. & N. Ry., 165 N. Y. 276, 59 N. E. 81; Woods v. Supervisors, 136 N. Y. 403, 32 N. E. 1011. The cases cited by the respondent in opposition seem to be clearly distinguishable. People ex rel. Ross v. Brooklyn, 69 N. Y. 605, was a review of assessment by certiorari, where it was held that chapter 169, Laws 1861, which furnished a complete system, was intended as a substitute for Act 1859, c. 385. Pratt Institute v. New York, 183 N. Y. 151, 75 N. E. 1119; Matter of Huntington, 168 N. Y. 399, 61 N. E. 643; People ex rel. Cath. Union v. Sayles, 32 App. Div. 203, 53 N. Y. Supp. 65. All have reference to the enactment of the general tax law in 1896 (Laws 1896, c. 908). It is very fully discussed in the Pratt Institute Case by Judge Vann, by which it appears that for a number of years the matter of exemptions from taxation had been before the Legislature, owing to many special statutes having been enacted, bringing confusion into the law. The Legislature finally after various attempts enacted the general tax law, having gone over the entire field of statutory law relative to taxation, and codified it into a complete system. By it certain property heretofore exempted by special act was placed upon the tax roll, and the special acts were to that extent abrogated. In Matter of Dobson, 146 N. Y. 357, 40 N. E. 988, the language of the act shows clearly the intention to repeal or modify the special law. In Fleming v. Dalton, 158 N. Y. 175, 52 N. E. 1113, it was held that the application of the general civil service act to the city of New York, having been clearly intended by the Legislature, the rule against the implied repeal of a special or local statute by a subsequent general statute does not apply.

We reach the conclusion, therefore, that chapter 450, Laws 1911, does not affect the provisions of the charter of the city of Buffalo on this proposition, and a bond with individual sureties acceptable to the mayor is sufficient.

Incidentally it may be said that this new enactment is open to criticism as class legislation, and violative of the Constitution, but as this point has not been raised by the relator, we will not assume to discuss it.

A peremptory writ may issue requiring the acceptance of a proper bond with individual surety or sureties acceptable to the mayor.