Matter of the Application of CHARLES P. SEELEY, as Sheriff of the County of Seneca, N. Y., for a Writ of Mandamus to GEORGE T. PURCELL, as County Clerk of Said County.

(Supreme Court, Seneca Special Term, March, 1921.)

Statutes — repeal of Laws of 1822, chap. 127, by resolution of board of supervisors of Seneca county — jury districts — County Law, § 12(14).

Mandamus — when motion for writ of, denied — county clerk of Seneca county — jurors.

The board of supervisors of Seneca county by virtue of section 12(14) of the County Law had plenary power to adopt the resolution of August 30, 1920, abolishing the two jury districts into which by chapter 127 of the Laws of 1822 said county was divided, and providing that thereafter the county should consist of a single jury district.

*People* v. *Johnson,* 110 N. Y. 134, distinguished.

The repeal of the said statute of 1822 was accomplished not by the County Law but by the resolution of the board of supervisors on August 30, 1920, which has the same force as a statute passed by the legislature itself.

A writ of mandamus commanding the county clerk of Seneca county to recognize as proper jurors those whose names were drawn from the north district jury boxes, to cancel the list drawn from the combined ballots, and to keep in separate boxes the ballots bearing the names of grand jurors and of trial jurors for the north and south districts, respectively, will be denied.

APPLICATION for a writ of mandamus, either peremptory or alternative, commanding the above named county clerk, among other things, to use at the trial term of the Supreme Court, to be held in the county of Seneca on the first Monday of March, 1921, only the lists of names of grand and trial jurors that have or may be drawn from the north jury district of said

Supreme Court, March, 1921.          [Vol. 114.

county and to disregard the lists of jurors drawn from the entire county.

John M. Sutton, for applicant.

Harris, Beach, Harris & Matson (David C. Munson, of counsel), for county clerk.

William S. MacDonald, for board of supervisors of Seneca county.

STEPHENS, J.  At the opening of the argument, the county clerk announced through his counsel that he is an indifferent party to the proceeding and would yield submissively without contention to whatever directions might be given in the premises.

The board of supervisors, however, appeared by counsel in defense of its action that has given cause for this controversy.

This application challenges the validity of a resolution of the board of supervisors of Seneca county passed August 30, 1920, abolishing the two jury districts into which the county was divided by chapter 127 of the Laws of 1822 and providing that thereafter the county shall consist of a single jury district; the resolution further provided for holding all trial terms of all courts of record at the courthouse in the village of Waterloo and a method by which the existing ballots of grand and trial jurors respectively of the two jury districts should be combined and that such jurors should thereafter be drawn from the entire body of the county.

Two lists of grand jurors and two lists of trial jurors to attend a term of the Supreme Court, appointed to be held at the courthouse in Waterloo on March 7, 1921, have been prepared by the county clerk; one list of grand jurors and one list of trial jurors

consists of names drawn from the north jury district boxes, and another list of grand jurors and one of trial jurors consists of names drawn from the combined ballots of the two jury districts; it is the position of the applicant here that the persons whose names were drawn from the north jury district constitute the only legal grand and trial jury respectively.

It is necessary, therefore, to determine whether or not the board of supervisors had authority to consolidate the two existing jury districts into one and our inquiry leads to an examination into the origin of the two shire system that has prevailed in Seneca county for nearly a century and the sources of the power which the board of supervisors claim justly to have used in abrogating it.

The county of Seneca was carved out of the county of Cayuga by chapter 31 of the Laws of 1804 and it was enacted that the two terms of the Courts of Common Pleas and General Sessions of the Peace " shall be holden at the meeting house on lot number thirty in the Town of Ovid until further legislative aid in the premises." The sum of $1,000 was authorized to be raised by taxation to build a courthouse and jail within a specified area in the town of Ovid, and commissioners were named to superintend the building of them; the legislature in 1805 by chapter 132 of that year authorized the commissioners to place the buildings on any part of lot No. 3 not exceeding fifty rods west of the limits described in the former act, appropriated $1,000 additional for the purpose, and declared that it should be lawful for the above mentioned courts to adjourn the next term of court from the meeting house to the house of John Seely on lot No. 3; more moneys were later directed to be raised to complete the structures, $1,500 in 1806 and $2,000 in 1807 (Laws of 1806, chap. 146; Laws of 1807, chap. 142); by the latter act

the number of terms of court was increased to three to be held " at the courthouse, in said county."

The Revised Laws of 1813, chapter 65, provides that the Courts of Common Pleas and General Sessions of the Peace should be held in the county of Seneca at the courthouse of said county on the second Tuesday of May and on the first Tuesday of October and February.

A courthouse and jail were authorized to be built in the village of Waterloo in the town of Junius by chapter 189 of the Laws of 1817; commissioners were appointed by that act to superintend the erection of the buildings and the board of supervisors was required to raise the sum of $4,000 for the enterprise; it was further enacted that when the courthouse was suitable for occupancy it should be the duty of the courts to adjourn from the courthouse at Ovid to the one in Waterloo, and that prisoners should be removed from the jail at the latter place to the new jail when ready and that the courthouse and jail so to be erected in the village of Waterloo should thenceforth be the courthouse and jail of the county of Seneca; the board of supervisors was authorized to dispose of the buildings at Ovid after the new ones had been constructed in Waterloo.

We come now to the consideration of the embarrassing statute, chapter 137 of the Laws of 1822.

It was provided in that act that the several courts thereafter to be held in Seneca county should be held alternately in the courthouse in the town of Ovid and the courthouse in the town of Junius and that there should be two jury districts in the county, the towns comprising each being named in the statute; it was further enacted that it shall not be lawful for the supervisors to sell the courthouse at Ovid or the lot on which it stands.

Many of the statutes referred to have no very vital relation to our problem but have been mentioned in order to emphasize that we have thus far been dealing with the period in the history of the state when the legislature was concerned with the minute details of county government and regulation of county business; the exercise of these governmental functions was transferred from the state legislature to the local legislative bodies by the Constitution and appropriate legislation under it; by the Constitution of 1846, amended in 1874, the legislature was deprived of the power that it had theretofore exercised in this respect and it was prohibited from passing any private or local bill, '' Locating or changing county seats,'' or '' Selecting, drawing, summoning, or empaneling, grand or petit jurors.'' Const. 1846, as amd. 1874, art. III, § 18. In our present constitution the same provisions are found at the like numbered article and section.

When the right to regulate local municipal governments in certain specified particulars was taken away from the legislature by the constitutional provisions the same sovereign power that deprived it of that right imposed upon it the duty to confer upon the boards of supervisors of the several counties of the state, by general laws, such further powers of local legislation and administration as the legislature may from time to time prescribe or deem expedient. Const. 1846, art III, § 17; Amendt. 1874, art. III, § 23; Const. 1894, art. III, § 27.

Pursuant to the mandate of the Constitution the legislature has from time to time conferred such further powers upon the boards of supervisors; among other general powers thus conferred is that '' To make one or more jury districts and to make such regulations in respect to the holding of terms of courts as

shall be necessary by reason of such change." County Law, § 12, subd. 14.

The ancestry of the above quoted extract from the County Law can be briefly traced; the identical language makes its initial appearance in chapter 570, Laws of 1881, which act apparently contains the first definite authorization of boards of supervisors to fix the number of jury districts, and constitutes subdivision 14, section 12 of the County Law of 1892 (chap. 686); a portion of the quoted language " to make such regulations in respect to the holding of (the) terms of courts as shall be necessary by reason of such change " appears, however, in chapter 482, Laws of 1875, not in any relation to any change in jury districts but in relation to a change in the location of a county courthouse.

It is an interesting discovery that the legislature by chapters 132 and 374 of the Laws of 1881 changed the boundaries of the two jury districts in Steuben county as indicative of the practical interpretation placed by the legislature upon the constitutional barrier against local bills for that purpose and that later at the same session, chapter 570 was passed, conferring authority upon boards of supervisors to legislate in that particular.

It is immaterial, however, for our present purpose whether the right to make one or more jury districts in a county resides concurrently in the legislature and the several boards of supervisors or solely in the latter bodies, because of constitutional and legislative provisions; the board of supervisors of Seneca county has consolidated the former jury districts into one by appropriate legislation and its action must be respected, providing it had the requisite authority to do so.

The authority of the board of supervisors in this

regard and the validity of their action is questioned solely upon the ground that the act of 1822 has never been repealed and is, therefore, yet controlling.

The counsel for the applicant concedes in his brief that if the act of 1821 had been or should be repealed by the legislature the board of supervisors would have had or would have ample authority for doing as it has done; the legislature has, however, conferred the power upon the board of supervisors " to make one or more jury districts;" it would not be claimed, successfully at any rate, if the legislature had the power and should exercise it doing precisely what the board of supervisors has done, that such action would not operate as a repeal of the statute. of 1822; this is a necessary conclusion, otherwise the act of 1817 would still be operative for it too is unrepealed except by the circumstances that the act of 1822 is the later enactment covering the same subject. *Matter of Troy Press Co.,* 94 App. Div. 514; affd., without opinion, 179 N. Y. 529.

An act passed by the board of supervisors pursuant to authority delegated or conferred by the legislature has the same force as a statute passed by the legislature itself. *Village of Carthage* v. *Frederick,* 122 N. Y. 268; *Crayton* v. *Larabee,* 220 id. 493.

It seems to me of little importance, therefore, whether the legislation superseding the earlier statute was enacted by the legislature or by another legislative agency duly authorized to enact it.

The applicant invokes the familiar rule that a special law is not repealed by a general one; assuming for the moment that this rule is pertinent to our present inquiry, nevertheless, the ultimate test after all rules of statutory interpretation have been applied and to which all rules must yield is the legislative intent; the search for it leads below the surface of verbal expression and piercing all disguises goes straight to

the purpose of the law makers, aided by formulated rules when they serve, bound by no rule that obstructs the discovery of the rational genuine intent of the legislature. *Matter of Dobson,* 146 N. Y. 357.

It is scarcely conceivable that the legislature after granting to the county legislative bodies authority to make jury districts intended that the statute of 1822 should retain its vitality; an examination of the legislation concerning kindred conditions in the county of Steuben lends support to this conclusion; in 1853 that county was divided into two jury districts (Laws of 1853, chap. 578) and in the following year courts were authorized to be held alternately in Bath and Corning (Laws of 1854, chap. 98); three separate acts were afterwards passed changing the boundaries of the jury districts (Laws of 1868, chap. 191; Laws of 1881, chaps. 132, 374); each of these acts, except the last one, was abrogated by the enactment of its successor; as above stated at the same session of the legislature, at which chapters 132 and 374 of the Laws of 1881 were passed, a general law was enacted giving power to boards of supervisors to make the jury districts; chapter 374 of the Laws of 1881 has never been otherwise repealed by the legislature; however, in 1904 the board of supervisors made three jury districts in the county instead of the two then existing; this action was under scrutiny in *Lyon* v. *Board of Supervisors,* 115 App. Div. 193, though the precise question presented here was not involved there, except incidentally.

We are not, however, required in the last analysis to regard or to disregard the rule to which reference has been made; the repeal of the act of 1822 was accomplished not by the general County Law but by the special law enacted by the board of supervisors.

I conclude, therefore, that the board of supervisors of Seneca county had plenary power to pass the enact-

ment consolidating the two jury districts into one by virtue of section 12, subdivision 14, of the County Law.

There is nothing hostile to this conclusion in *People* v. *Johnson,* 110 N. Y. 134; at the time of that decision in 1888 the act of 1822 was still operative though the right to prescribe the number of jury districts resided in the county legislature but had not then been exercised.

The only other statutes to which my attention has been called or my own researches have disclosed relating to Seneca county and bearing upon this investigation but too remotely to merit more than a mention are Revised Statutes of 1829, part III, chapter I, title V, section 20, subdivision 40, as amended by chapter 65, Laws of 1852.

I am conscious that the decision rendered upon this application does not entirely clarify the situation, for the effect of this determination is simply a denial of a direction to the county clerk to recognize as proper jurors those whose names were drawn from the north jury district boxes, to cancel the lists drawn from the combined ballots, and to keep in separate boxes the ballots bearing the names of grand jurors and of trial jurors for the north and south districts respectively.

The application is denied.

Application denied.