The People of the State of New York ex rel. Cooper Union for the Advancement of Science and Art, Respondent, *v.* Frank Gass, as Register of the County of New York, Appellant.

1. Charitable Corporations — Charter Provisions Exempting from Taxation May Be Altered or Repealed by Legislature in Its Discretion. Although the corporate charter of a charitable educational institution (L. 1859, ch. 279) authorizes its founder to convey to it certain property, prescribing the form of the deed and the purposes of the corporation, and further provides that the property conveyed and all endowments made to the corporation shall be exempt from taxation "while the same shall be appropriated to the uses, intents and purposes * * * provided for," a contention that the founder was a party to the incorporation and that in consideration of the conveyance which he made the state agreed that the property conveyed, while devoted to the charitable uses mentioned, should not be taxed and that such agreement constituted a contract which the state could not subsequently impair, cannot be upheld, since the State Constitution in force at the time of the incorporation (N. Y. Const. of 1846, art. 8, § 1) provided that all general laws and special acts authorizing the formation of corporations "may be altered from time to time or repealed," and the founder when he executed the deed and the incorporators when they accepted the charter must be presumed to have known that this was the fundamental law of the state.

2. Tax Law — Amendment Imposing Recording Tax on Mortgages — Charter Provisions of Charitable Corporations Exempting from Taxation Repealed Thereby. Where, therefore, by an amendment to the Tax Law (L. 1906, ch. 532) a recording tax upon mortgages

is thereafter imposed and it is provided that "no mortgage of real property situated within this state shall be exempt, and no person or corporation owning any debt or obligation secured by mortgage of real property situated within this state shall be exempt from the taxes imposed by this article by reason of any provision in any private act or charter which is subject to amendment or repeal by the legislature," the exemption from taxation provided for in the charter of the corporation in question, so far as mortgages belonging to it are concerned, must be deemed to have been repealed, and an application for a peremptory writ of mandamus to compel the register of a county to record such a mortgage without the payment of any tax thereon should be denied.

*People ex rel. Cooper Union* v. *Gass*, 119 App. Div. 280, reversed.

(Argued November 18, 1907; decided December 20, 1907.)

Appeal from an order of the Appellate Division of the Supreme Court in the first judicial department, entered May 24, 1907, which affirmed an order of Special Term granting a motion for a peremptory writ of mandamus to compel the defendant to record in his office a certain mortgage executed to the relator.

The facts, so far as material, are stated in the opinion.

*William S. Jackson,* Attorney-General (*James A. Donnelly* of counsel), for appellant. The relator took its charter under the Constitution and the laws, subject to the right of the legislature to alter or amend it. (*C. S. Bank* v. *Owensboro,* 173 U. S. 636; *Pratt Inst.* v. *City of New York,* 183 N. Y. 151; *L. W. Co.* v. *Clark,* 143 U. S. 1; *Covington* v. *Kentucky,* 173 U. S. 231; *Stanislaus Co.* v. *S. J. C. & I. Co.,* 192 U. S. 201; *Tomlinson* v. *Jessup,* 15 Wall. 454.) The Mortgage Tax Law repealed the provisions of special acts relating to exemptions from taxation heretofore granted to persons or corporations owning any debt or obligation secured by mortgage of real property. (*People ex rel. Cooper Union* v. *Wells,* 180 N. Y. 537; 98 App. Div. 623; *Pratt Inst.* v. *City of New York,* 183 N. Y. 151.)

*W. E. Carnochan* and *Henry B. Closson* for respondent. The provision in the act of 1859, exempting the relator's

property from taxation, is not subject to amendment or repeal by the legislature. (*People ex rel. Cooper Union* v. *Wells,* 180 N. Y. 537; *Powers* v. *D. & G. H. R. Co.,* 201 U. S. 543.)

WILLARD BARTLETT, J.   The Tax Law of this state, as amended in 1906, imposes a recording tax on mortgages. (Laws of 1906, ch. 532.)   The relator, being the owner of a mortgage, presented it to the register of the county of New York for record.   The register refused to record the mortgage unless the recording tax was paid.   The relator, claiming that the mortgage was exempt from taxation under the provisions of its charter, applied to the Supreme Court at Special Term and obtained therefrom a peremptory writ of mandamus commanding the register to place the mortgage on record in his office upon the payment of his legal fees for recording the same, but without the payment of any tax upon the said mortgage.   The register appeals to this court from an order of the Appellate Division affirming the Special Term order directing the issuance of the writ.

The corporate charter of the Cooper Union for the Advancement of Science and Art is chapter 279 of the Laws of 1859.   It authorized Peter Cooper, the well-known philanthropist, to convey to the corporate body thereby created the block of land on Astor place in the city of New York since occupied by the celebrated Cooper Union building.   The form of the deed to be given was prescribed in the statute itself.   The purposes of the corporation were fully set forth and are comprehensively indicated by the corporate name.   In section 11, near the end of the act, occurs the exemption clause, which the courts below have held still to be effective. It is in the following words:

"§ 11. The premises and property mentioned in the said deed, and which shall at any time belong to or be held in trust by the corporation hereby created, or the trustees thereof, including all endowments made to it, shall not, nor shall any part thereof, be subject to taxation while the same

shall be appropriated to the uses, intents and purposes hereby and in the said deed provided for."

If it was within the power of the legislature to repeal this exemption, there can be no doubt that it was repealed, so far as mortgages belonging to the Cooper Union are concerned, by the amendment to the Tax Law adopted in 1906 and constituting section 292 of the statute, which reads as follows :

" No mortgage of real property situated within this State shall be exempt, and no person or corporation owning any debt or obligation secured by mortgage of real property situated within this State shall be exempt, from the taxes imposed by this article by reason of anything contained in any other statute, or by reason of any provision in any private act or charter which is subject to amendment or repeal by the Legislature, or by reason of non-residence within this State or for any other cause." (Laws of 1906, ch. 532.)

This is conceded by the learned judge who wrote for the Appellate Division ; but it was there held that Peter Cooper was a party to the incorporation of the relator ; that in consideration of the conveyance which he made, the state agreed that the property conveyed should be devoted to certain specified charitable uses ; that by subjecting it to taxation it would *pro tanto* be diverted from those uses ; and consequently that the agreement on the part of the state that it should not be taxed must be observed by the legislature and could not be disregarded under the guise of an amendment to the corporate charter.

In 1859, when the charter of the relator was enacted, there existed a reserved right on the part of the legislature to alter and amend it. The provisions of the Constitution of 1846 on the subject were the same as those contained in the present Constitution, to wit :

" Corporations may be formed under general laws ; but shall not be created by special act, except for municipal purposes, and in cases where, in the judgment of the Legislature, the objects of the corporation cannot be attained under general laws. All general laws and special acts passed pursuant to

this section may be altered from time to time or repealed."
(Const. art. VIII, sec. 1.)

Mr. Peter Cooper when he executed and delivered his deed
and the incorporators of the Cooper Union when they accepted
the charter, must be presumed to have known that this was
the fundamental law of the state.   The reservation of the right
to amend or repeal special charters was undoubtedly inserted
in our Constitution in view of the doctrine of the Dartmouth
College case (*Dartmouth College* v. *Woodward*, 4 Wheaton,
518) that the charter of a private corporation is a contract and
that if it confer benefits upon the corporators inducing its
acceptance, such benefits cannot be withdrawn without the
consent of the corporation, in the absence of a reserved power
in the legislature to withdraw them.   Notwithstanding that
decision, some eminent judges have questioned its application
to charter stipulations restricting the taxing power of the state ;
and have insisted that one legislature of a state has no power
to bargain away the right of any succeeding legislature to levy
taxes in as full a manner as the Constitution will permit.
(See opinions of MILLER, J., in *New Jersey* v. *Yard*, 95 U. S.
104, 114, and COLE, J., in *West Wisconsin Rwy. Co.* v. *Bd.
of Supervisors*, 35 Wis. 257, 265.)   A contrary view, however,
has been adopted by the Supreme Court of the United States ;
and that tribunal must be regarded as committed to the prop-
osition that the legislature may bind the state in relinquishing
the right to tax a corporation ; and that such a provision in a
corporate charter constitutes a contract which the state may
not subsequently impair.   (*Humphrey* v. *Pegues*, 16 Wall.
244, and the cases there cited.)

But this doctrine of constitutional law is subject to a very
important qualification.   " To avoid the force of the principle
that a corporate charter is a contract which oftentimes operates
in some unexpected manner, and perhaps unjustly to the pub-
lic at large, the people of some of the states have made express
provision by their constitutions that all charters of private
incorporation granted by the legislature shall be subject to
amendment or repeal at the legislative will."   (1 Cooley on

Taxation, 115.) Such is the case in this state. " The charters are still contracts, but contracts with a reserved right on the part of the State to amend or terminate them. The rule would be the same if the charter were granted while a general law of the State was in force which declared that all grants of the kind should be subject to the legislative power of alteration and repeal; for the grantees would accept their franchises with notice of and qualified by such declaration." (Ibid.)

The legislative power to amend a corporate charter, where it exists at all — whether by virtue of a State Constitution or a general law of the state reserving such right — includes the right to repeal a provision exempting the property of the corporation from taxation. (*Tomlinson* v. *Jessup*, 15 Wall. 454; *West Wisconsin Rwy. Co.* v. *Bd. of Supervisors*, 35 Wis. 257; affd.; 93 U. S. 595; *Wagner Institute* v. *Philadelphia*, 132 Pa. St. 612.)

In the *Tomlinson* case the reserved right of amendment was contained in a general statute of South Carolina. In the exercise of the power conferred upon it by this law, the legislature repealed an exemption from taxation which had been granted to a railroad company. The repeal was upheld by the Supreme Court of the United States, in an opinion written by Mr. Justice FIELD, in which all the members of the court concurred. He conceded that the exemption might have added greatly to the value of the stock of the corporation and induced the plaintiff to purchase his shares, but refused to allow this consideration any weight in determining the validity of the subsequent taxation. The power reserved to the state by the general law authorized any change in the contract or its entire revocation. I quote from his opinion : " The original corporators, or subsequent stockholders, took their interests with knowledge of the existence of this power, and of the possibility of its exercise at any time in the discretion of the legislature. The object of the reservation and of similar reservations in other charters is to prevent a grant of corporate rights and privileges in a form which will preclude legislative interference with their exercise if the public interest

should at any time require such interference.   It is a provision intended to preserve to the State control over its contract with the corporators, which without that provision would be irrepealable and protected from any measures affecting its obligation.   *   *   *   The reservation affects the entire rela- tion between the State and the corporation and places under legislative control all rights, privileges and immunities derived by its charter directly from the State."   Certainly, exemption from taxation is an immunity derived directly from the state.

The Wisconsin case arose under a provision of the Consti- tution of that state which declared that all general laws or special acts under which corporations without banking powers were created might be altered or repealed by the legislature at any time after their passage.   This was held to warrant the repeal of a statute exempting certain property of a railroad company from taxation, the court holding that although the exemption constituted a part of the contract between the state and the corporation, it was, nevertheless, by virtue of the reservation of power in the fundamental law, liable to be revoked in the wisdom of the legislature, like any other provision of the charter.

The case of *Wagner Institute* is particularly interesting because there the party claiming exemption, like the relator here, was a charitable corporation organized for similar purposes, its full corporate name being the Wagner Free Institute of Science.   Exemption was claimed under the cor- porate charter, which provided as follows: " The cabinet collections and lot of ground on which it is erected, belonging to the said institution, with any bequests, gifts or endow- ments, so long as the same shall be used for free lectures, shall be exempt from taxation."   Under the Constitution of Pennsylvania as it existed when this exemption was granted the legislature possessed the power to alter or revoke any charter of incorporation " whenever in their opinion it may be injurious to the citizens of this Commonwealth."   The Supreme Court of Pennsylvania held that a repeal of the exemption had been effected by a subsequent general enact-

ment, saying : " Under the Constitution of the United States and the decisions of the Supreme Court a charter is ordinarily a contract, but a charter which is revocable at the will of the grantor is only a quasi contract and approaches much more closely to the character of a license.   To such a charter the rule of the *Dartmouth College* case does not apply and the decisions are uniform to this effect."

Many other decisions might be cited illustrative of the exercise of the reserved power to amend or repeal corporate charters in the direction of abolishing special exemptions from taxation.   It will suffice to refer to *Covington* v. *Kentucky* (173 U. S. 231) ; *Citizens' Savings Bank* v. *City of Owensboro* (Id. 636), and the cases therein cited.

It seems to me that it is a mistaken view of the facts, as they existed at the time when the law constituting the charter of the Cooper Union was enacted, to assume that one of the considerations moving to Peter Cooper for the conveyance of the land which he gave to the corporation was an *irrevocable* agreement on the part of the state that neither that land nor any other property of the corporation should be subjected to taxation.   It may very well be that he was influenced to some extent by the present assurance then given by the legislature that it should not be taxed, but this was accompanied by the knowledge on his part that the legislature possessed the constitutional power to revoke the exemption, and might at any time exercise it.   He must be deemed to have acted in the light of what the law presumes him to have known in this respect ; and, if so, how can it be held that he conveyed the Cooper Union property to the corporation in consideration of an irrevocable promise that it should be exempt from taxation ?

I am clear that from any point of view the repeal of the exemption conferred by the charter of the relator was within the power of the legislature.   This fact, however, should be mentioned :  The relator's petition for the writ of mandamus shows that the mortgage which it sought to have recorded, without paying the mortgage tax, represented funds received

from endowments, and not in any manner proceeding from the real estate conveyed to it by Peter Cooper. Thus, even if the Appellate Division were right in regarding that particular real estate as having been irrevocably exempted from taxation, it is difficult to perceive how the irrevocable exemption could extend to personal property derived from other sources. But I do not desire to base my vote for the reversal of the order on this distinction. I think the legislature, under the Constitution, did not and could not abdicate its power to repeal the exemption as to any or all of the property of the relator, and that it was free to exercise that power whenever it deemed that sufficient reason existed to do so. With the wisdom of its exercise the courts have nothing to do.

The orders appealed from should be reversed and the application for a writ of mandamus should be denied, with costs and ten dollars costs of motion.

CULLEN, Ch. J., O'BRIEN, VANN, WERNER and CHASE, JJ., concur; GRAY, J., concurs in result.

Ordered accordingly.