THE PEOPLE OF THE STATE OF NEW YORK ex rel. ROOSEVELT HOSPITAL, Appellant, *v.* FRANK RAYMOND et al., as Commissioners of Taxes and Assessments in the City of New York, Respondents.

**Tax — statutory exemption from taxation — when not repealed by General Tax Law.**

The General Tax Law (L. 1896, ch. 908) was such a revision of and substitution for former statutes, general and special, on the subject of exemption from taxation, as to supersede and repeal them by implication, and this rule is applicable to all cases where the exemption contended for has relation to property which was donated or conveyed without any express or implied condition.

The reserved power to alter or repeal a charter will not be held to have been exercised by implication in a case where to do so will result in the violation of a promise by the state through which the conveyance of property was induced to a domestic benevolent corporation; which property, except for the promise, might have been given outside the state.

Where the transfer of property, in endowment of a charitable corporation, was indirectly induced by a promise of an exemption from taxation, which was acted upon, it will not be presumed that the legislature, in passing a general law, operative in repeal of prior exemptions, intended to repeal any exemptions awarded under such circumstances.

Chapter 4 of the Laws of 1864 incorporating Roosevelt Hospital contained a provision (§ 3) that " the property, real and personal, of said corporation shall be exempt from taxation." *Held*, that from the circumstances under which the charter was enacted, this provision is not to be deemed to have been repealed by the General Tax Law. *Matter of Huntington,* 168 N. Y. 399; *Pratt Institute* v. *City of New York,* 183 N. Y. 151; *People ex rel. Cooper Union* v. *Gass,* 190 N. Y. 323, distinguished.

*People ex rel. Roosevelt Hospital* v. *Raymond,* 126 App. Div. 720, reversed.

(Argued November 11, 1908; decided January 29, 1909.)

Appeal from an order of the Appellate Division of the Supreme Court in the first judicial department, entered June 5, 1908, which reversed an order of Special Term vacating an assessment for taxation and dismissed a writ of certiorari to review the same.

The facts, so far as material, are stated in the opinion.

*H. B. Closson* and *John Mason Knox* for appellant. It was not the intention of the legislature, by the General Tax Law of 1896, to repeal a special exemption from taxation which was promised in the charter of a benevolent corporation as an inducement to procure, and which did procure, a transfer to it by specific individuals of specific property, which but for the promise might have been otherwise disposed of. (*People ex rel. Cooper Union* v. *Wells*, 180 N. Y. 537; *People ex rel. B. S. Bank* v. *Feitner*, 191 N. Y. 88; *Matter of Allison* v. *Welde*, 172 N. Y. 421; *People ex rel. Callahan* v. *Bd. of Education*, 174 N. Y. 160.) The memorial of Mr. Roosevelt's trustees to the legislature of 1864, accompanied by a copy of the desired charter, the enactment by the legislature of the charter, and the subsequent conveyance upon the faith of it by Mr. Roosevelt's executors and his trustees to the corporation of all of his real estate and personal property of the value of about $1,000,000, together constitute not simply the charter of a corporation, but a contract by the legislature with Mr. Roosevelt's trustees, in consideration of their conveyance of this property to its creature, the corporation, that so long as it should permit the corporation to exist the whole of the income of its property should be devoted to its benevolent purposes, and no part of such income diverted either to the support of the state or any other object foreign to the purposes of the institution. (*Powers* v. *D., etc., Ry. Co.*, 201 U. S. 543; 138 Fed. Rep. 264; *Ayers* v. *Order of United Workmen*, 188 N. Y. 280; *People* v. *O'Brien*, 111 N. Y. 1; *Miller* v. *State*, 15 Wall. 478; *Holyoke* v. *Lyman*, 15 Wall. 500.)

1909.] People ex rel. Roosevelt Hospital *v.* Raymond. **191**

N. Y. Rep.]        Opinion of the Court, per Gray, J.

*Francis K. Pendleton, Corporation Counsel (David Rum-
sey* and *Curtis A. Peters* of counsel), for respondents.   The
special exemption from taxation contained in the relator's
charter was repealed by the General Tax Law, being chapter
908 of the Laws of 1896.   (*People ex rel. Y. M. Assn.* v.
*Sayles,* 32 App. Div. 197 ; 157 N. Y. 677 ; *Matter of Hunt-
ington,* 168 N. Y. 399 ; *Pratt Institute* v. *City of New York,*
183 N. Y. 151.)

Gray, J.   The relator instituted this proceeding to review,
and to have declared illegal, an assessment upon certain real
estate belonging to it in the city of New York, for the year
1906.   The following are the facts of the case.   In 1863,
James H. Roosevelt, a resident of the city of New York,
died ; leaving a will, by which he disposed of his real and
personal estate.   The residue of his personal estate he gave to
trustees named, in trust for the establishment of a " hospital
for the reception and relief of sick and diseased persons and
for its permanent endowment ".   He devised all of his real
estate, subject to the payment of an annuity of $4,000, which
has long since expired, to his executors ; in trust to receive
the rents and profits thereof for the use of a nephew and,
upon his death without issue, to sell the same and to pay
the proceeds to the trustees above referred to, towards the
" hospital endowment ".   He directed his trustees " promptly
to apply to the legislature of this state for proper acts to
incorporate, secure and perpetuate said hospital " and then
provided that " should such legislature, for two years next
after my decease (and during two lives designated), refuse or
neglect to grant a liberal charter for the safe organization,
conduct and perpetuity of such hospital establishment ", the
trustees were to pay over all of the trust fund to the govern-
ment of the United States of America.   The validity of the
trust was questioned ; but it was sustained in the familiar case of
*Burrill* v. *Boardman,* (43 N. Y. 254).   The life of the nephew
terminated some two months after the death of the testator and,
thereupon, the trustees designated in the will memorialized

the legislature of the state for the passage of an act of incorporation; setting forth the provisions of the will with respect to the establishment of the hospital, as above referred to. The memorial included the form of the charter desired. In 1864, the legislature passed the act of incorporation as proposed. (Chapter 4, Laws of 1864.) The act contained the provision that "the property, real and personal, of said corporation, shall be exempt from taxation". It, further, provided that "the said corporation shall be and is hereby empowered: 1. To demand and receive from the executrix of the last will and testament of the said James H. Roosevelt * * * and from the residuary legatees named in said will, all personal property and real estate, * * * in any manner devised or bequeathed by the said will for the establishment in the City of New York of a hospital as aforesaid". Subsequently, the trustees, by formal resolution, accepted and adopted the act of incorporation and they requested the executrix of Mr. Roosevelt to execute a deed conveying to the corporation all of the real estate devised. This request was complied with by the executrix and she conveyed parcels of real estate, which included the parcel described in the present proceeding. Having received the personal and real property given by the testator for the establishment and endowment of the hospital, the trustees bought a block of land, between Ninth and Tenth avenues, and Fifty-eighth and Fifty-ninth streets, in the city of New York, and erected thereupon suitable buildings; which, ever since their completion, have been used for the reception and treatment of patients.

The commissioners of taxes and assessments of the city of New York have assessed the portion of the relator's real estate for the purposes of taxation, upon the ground that none of its property was exempt, except as it came within the provisions for immunity, contained in subdivision 7 of section 4 of the General Tax Law of 1896. Those provisions exempt the real property of such an institution, only, when "used exclusively for carrying out thereupon one or more of such

purposes". The tax commissioners determined that the provision for exemption from taxation in the relator's charter had been repealed by the passage of the General Tax Law and that, as the property assessed was not used exclusively for carrying out thereupon a corporate purpose, it was subject to taxation like any other taxable property. It appears that the property in question was leased by the relator and that the revenue derived therefrom was applied to the uses of the hospital.

Upon the hearing at the Special Term, the court ordered that the assessment be stricken from the rolls and that the tax be canceled. Upon appeal to the Appellate Division, the order of the Special Term was reversed and the writ of certiorari, procured to be issued by the relator, was dismissed.

The relator, in appealing to this court from the determination of the Appellate Division, contends that it was not the intention of the legislature, in enacting the General Tax Law of 1896, to repeal the special exemption from taxation, which was contained in the relator's charter, and that that provision was a promise to induce the transfer to the corporation of the property. At the Special Term it was considered that there was no substantial distinction between this case and the case of *People ex rel. Cooper Union* v. *Wells*, (180 N. Y. 537); where, upon quite similar facts, the assessment had been vacated. In the Appellate Division, a majority of the justices, upon the authority of certain decisions by this court, (*Matter of Huntington*, 168 N. Y. 399; *Pratt Institute* v. *City of New York*, 183 ib. 151; *People ex rel. Cooper Union* v. *Gass*, 190 ib. 323), held, in substance, that the passage of the General Tax Law was an exercise of the right reserved by the State Constitution to alter, or to repeal, all general laws, or special acts, authorizing the formation of corporations and that, as a comprehensive enactment upon the subject of taxation and exemption, it, impliedly, repealed all prior acts, general or special. They say that, as the present statutory provisions for exemption do not extend to the real estate of a hospital, when leased to others, however the income may be

13

194 People ex rel. Roosevelt Hospital v. Raymond. [Jan.,

Opinion of the Court, per Gray, J. [Vol. 194.

devoted exclusively to hospital purposes, "no bargain made by donors for exemption and incorporated in an act passed prior to the passage of the General Tax Law survives that enactment".

I am unable to agree in the view, which has been taken of the relator's case. In my opinion, it is carrying presumption too far to say that, in enacting the General Tax Law, the legislature intended to repeal such an exemption from taxation as was granted to the relator; however·valid the presumption, when entertained with respect to corporate charters generally, in which are lacking the peculiar features of the relator's case. The decisions of this court, which are relied upon by the respondents, do not, and should not, conclude us upon the questions now presented. In *Matter of Huntington*, (168 N. Y. 399), the state sought to collect a transfer tax upon a legacy given by Huntington's will to this hospital, in 1900, and this court sustained the state comptroller's claim. The reasoning, that the General Tax Law of 1896 was intended to provide for this particular class of immunities and that its enactment worked the repeal of greater and inconsistent exemptions contained in special and private acts, was correct, as applied to the facts of that case. The case is authoritative where the exemption contended for has relation to property conveyed without any express, or implied, condition, or to that which is donated to it, generally, in the course of its existence. We there held that the General Tax Law was such a revision of, and substitution for, all former statutes, general and special, upon the subject of exemption from taxation, as to supersede and repeal them by implication. It was said of the statute that "the general rule of the liability to taxation of all property within the state was preserved, and the exemptions classified in such comprehensive phrase as to make all prior private and special exemptions unnecessary so far as the general act conferred the same exemptions as the special and private acts, and repugnant and inconsistent so far as the special and private acts conferred greater immunities and exemptions than the gen-

. eral act ", (p. 408) and that it was not necessary to enumerate the private statutes in the schedule of the repealed statutes. The court was asserting a general doctrine in the opinion and the broad language used finds its proper application, where the facts, upon which exemption from taxation is claimed, do not disclose a transaction with the state of such a nature as to repel the presumption of a legislative purpose, subsequently, to repeal the prior grant of exemption, by passing the General Tax Law. I do not find that the record in that case disclosed all the facts, as they now appear. Dependence was placed by the relator upon the charter exemption, without full reference to the will and the facts now here. Under the rule of that case, whatever property was acquired by the Roosevelt Hospital, subsequently, from other sources than Roosevelt's estate, became subject to taxation upon the passage of the General Tax Law of 1896; unless it was covered by the provisions for exemption in section 4 of the statute. In the case of *Pratt Institute*, (183 N. Y. 151), exemption from taxation was claimed by the institute as to certain property, which was not actually occupied by it, but which was leased for the purpose of obtaining income to carry out its educational work. Its charter had incorporated it as an educational institution and had exempted from local taxation any property actually occupied and used for its corporate purposes, or the revenues of which were exclusively devoted to its purposes. The decision followed the doctrine of the *Huntington* case and an assessment upon a portion of the real estate, with which Mr. Pratt had endowed it, was sustained, for not being used " for carrying out thereupon one or more" of the objects of the corporation, within the provisions for immunity of the General Tax Law. It was contended, in behalf of the institute, that the special act had not been repealed and that the provision for exemption was in the nature of a contract, whose obligations could not be impaired by legislation, and that contention was met in the opinion and answered. It does not appear that the endowment was attended by the peculiar facts to be observed in this case.

The peculiar features, which attended the incorporation and characterized the endowment of the Roosevelt Hospital, differentiate its case and render inapplicable the general doctrine. They are found in the provisions of Mr. Roosevelt's will, which directed his trustees to apply to the legislature for a " liberal charter " and, in the event of the refusal by the legislature to grant such a liberal charter, directed the payment of the trust fund to the government of the United States of America; in the memorial of the trustees to the legislature, setting forth the provisions of Roosevelt's will and proposing an acceptable act, which contained, among other provisions for incorporation, one for the exemption from taxation of its property; in the passage of the act as proposed, with the unusual clause empowering the corporation to demand and receive from Roosevelt's executrix and from the residuary legatees the personal and real property; in the formal acceptance by the trustees of the act as passed and in the subsequent conveyance by the executrix of the testator's real property. In this transaction with the legislature, there was the inducement to the state to secure for the community the great benefits promised by the testator's will through a grant of the " liberal charter " requested. There was, not only, the inducement to the trustees to organize and to the executrix to convey the property to the new corporation, in the legislative promise of an exemption of the endowment from taxation; but there was the singular provision empowering the corporation to demand from the latter the real property. She needed no legislative authority to convey it and the corporation needed none to demand it, and, therefore, the provision imported unusual significance into the mutual dealings. While the fact is not referred to by me as being conclusive upon the question, it may be observed that, as late as in the year 1905, the legislature, in an act amending the charter, with relation to the election of trustees, repeated the clause of exemption from taxation. While the validity of that portion of the enactment may be open to question, for the reasons which have been advanced in the opinion below,

1909.] People ex rel. Roosevelt Hospital v. Raymond. **197**

N. Y. Rep.]        Opinion of the Court, per Gray, J.

nevertheless, it seems to threw some light upon the question of the legislative understanding as to whether the charter exemption from taxation had been repealed.

The question in this case is not whether the legislature has repealed, by implication, in the enactment of the General Tax Law of 1896, all prior exemptions from taxation, contained in general statutes, or in special acts. That question, as a general proposition, is no longer open. We have decided it in the affirmative, for the reason that the presumption that the legislative body intended such a repeal is to be drawn from the comprehensive classification of the General Tax Law and from the circumstances attendant upon its enactment. The question before us is whether, when we regard the circumstances under which this particular charter was enacted, and when we consider the manner in which the legislature had induced the transfer of the testator's estate towards the endowment of this corporation, we shall hold that the presumption of the legislative intent to repeal shall, nevertheless, obtain in its case. The reserved power to alter, or to repeal, the charter may be conceded; but it is quite another thing to claim that the power has been exercised by the legislature, in view of the action previously taken by it to prevent the diversion of the testator's property to other uses and to retain it for the endowment of this corporation, by the promise that it should be exempt from taxation. The same reason for entertaining the presumption that the power was intended to be exercised with respect to such a case does not exist. The construction, which the court has given to the General Tax Law of 1896, does not, in my opinion, oblige us to do violence to our sense of the peculiar justice of this case; nor prevent us from taking that juster view of the action of the legislature in 1864, which forbids the presumption of an intended revocation of its act.

It will not do to hold that the reserved power to alter, or to repeal, a charter has been exercised by implication in a case, where to do so will result in the violation of a promise by the state, through which the conveyance of property was induced to a domestic benevolent corporation; which, except

for the promise, might have been given outside of the state. In such a case, I do not think that we should presume that the legislature intended to commit so gross a breach of faith. It should suffice to say, that the presumption is a general one, whose operation may be affected by the facts of a particular case.

The case of *People ex rel. Cooper Union* v. *Wells*, (180 N. Y. 537), is an authority in favor of this relator's claim for exemption. The Cooper Union was incorporated under a special act in 1859, (chap. 279, Laws of 1859) ; which " authorized " Peter Cooper to convey to the corporation therein provided for certain premises, for the purpose of founding in the city of New York a public institution for the advancement of science, art, philosophy, letters and other educational, literary and benevolent purposes, therein set forth. The act provided that the corporate property, with which it should be endowed, should not be subject to taxation, while appropriated to uses in the act provided for. Thereafter, Peter Cooper conveyed certain property to the corporation and by his will provided for its endowment. After his death his trustees executed his testamentary purpose by transferring property in endowment of the Cooper Union. When the tax commissioners sought, in 1902, to assess a portion of it for taxation, upon the ground that it was leased out by the corporation for revenue, it was held, in a proceeding to review their determination, that the assessment was illegal. Although no opinion was written in this court, or at the Appellate Division, there was but the one possible ground for our decision and that was, substantially, as declared by Justice Bischoff ; who decided the case at the Special Term. He held that " the exemption was not a spontaneous concession, but was a direct condition to attach to the gift". He observed that the statute held out an offer " and the terms were to be accepted by Mr. Cooper's delivery of a deed, which the act authorized him to make". It was the controlling feature in that case, that terms held out by the special act of incorporation, in an exemption from taxation of property to be conveyed, presently or by way of

1909.] People ex rel. Roosevelt Hospital *v*. Raymond. 199

N. Y. Rep.]        Opinion of the Court, per Gray, J.

endowment, by Peter Cooper, were accepted, and acted upon, by him.

In 1907, the Cooper Union claimed to be exempt from taxation, pursuant to an amendment in 1906 of the General Tax Law, by which a recording tax was imposed upon mortgages offered for record ; but the claim failed in this court. The case was that of *People ex rel. Cooper Union* v. *Gass*, (190 N. Y. 323). In that case, the mortgage represented funds derived from other sources than from the endowments by Peter Cooper. The discussion in the opinion took a somewhat wider field than was presented by a mere consideration of the source of the fund, it is true, and embraced the question whether the charter provision constituted a contract which the state might not impair by legislation. With respect to that contention, it was held that, if a contract, it was one which was within the reserved right of the state to amend, or terminate. Some expressions of the opinion are at variance with the proposition necessarily decided in the prior *Cooper Union* case and with the view I am presenting, in its discussion of the relation of Peter Cooper to the act of incorporation ; but they were not essential to the decision as to the liability of the property to that tax. The opinion was in line with the decisions, which have laid down the general rule that the Tax Law of 1896 repealed prior exemptions, contained in general, or in special, statutes. If the claim for exemption rested only upon the ground of a contract with the state, the opinion would sufficiently and ably answer it.

The rule to be applied, in my opinion, is that where the transfer of property, in endowment of a charitable corporation, was directly induced by a promise of an exemption from taxation, which was acted upon, it will not be presumed that the legislature, in passing a general law, operative in repeal of prior exemptions, intended to repeal any exemption awarded under such circumstances. In the case of *Cooper Union* v. *Gass*, the question presented was rightly decided and to confine its decision accordingly will introduce no confusion in the law. Any confusion of thought, with respect

**200** People ex rel. Roosevelt Hospital *v.* Raymond. [Jan.,

Dissenting opinion, per Vann, J.          [Vol. 194.

to our decisions, is unnecessary, when consideration is given to the questions actually presented by the facts in the decision of the two prior cases of the *Cooper Union* and of this relator. A substantial distinction exists between the present claim of this relator and those claims of other institutions, which have no other basis than a spontaneous legislative concession of exemption from taxation, which subsequent views of state policy have caused the legislature to repeal.

Thus, while we adhere to the rule declared in the cases referred to, that the reservation of the right to alter, or to repeal, a corporate charter becomes a part of the charter of every corporation, whether under a general, or a special, statute, and that the General Tax Law of 1896 must be presumed to have been intended as a repeal of prior exemptions in the statutes, I think that we should, also, hold that the presumption will not be permitted, when to do so would be to impute to the legislature the intention to violate an express promise, operating to induce the person to whom made to transfer property in endowment of a corporation. The facts of such a case, as Judge Vann observed in his opinion in the *Pratt Institute* proceeding, with reference to the first *Cooper Union* case, make it "clearly distinguishable".

I advise that the order appealed from should be reversed and that the order of the Special Term should be affirmed; but, under the circumstances, without costs in this court against the respondents.

Vann, J. (dissenting).   In 1896 the Tax Law was passed after it had been drafted, with much labor and upon long consideration, by the commissioners of statutory revision, for the purpose, as the legislature directed, of consolidating and revising the statutes "providing for the collection and assessment of taxes, and the exemption of property from taxation throughout the State." (L. 1896, ch. 908; L. 1889, ch. 289, section 1, subd. 3.)

In 1898 we reviewed that act and held that it impliedly repealed a clause in a special statute exempting certain prop-

1909.] People ex rel. Roosevelt Hospital v. Raymond. 201

N. Y. Rep.]        Dissenting opinion, per Vann, J.

erty of benevolent corporations from taxation. Adopting the language of the Appellate Division, we declared "that the intention of the Legislature was influenced by the mass of special legislation upon the subject of exemptions, and by the need of a uniform system; and that, as it may be gathered from the statute itself, it was to establish a system which should place exemptions of the real property of charitable corporations upon a basis of clearly defined equity, free from the unsystematic partialities of special favoritism, and free from the danger of hazarding their usefulness by embarking in outside enterprises." (*People ex rel. Catholic Union* v. *Sayles*, 157 N. Y. 679; 32 App. Div. 203, 205.) The "basis of clearly defined equity," thus alluded to, was the general provision of the Tax Law exempting the real estate of a corporation organized exclusively for specific charitable, religious or benevolent purposes, when used exclusively for carrying out thereupon one or more of such purposes. The "outside enterprises" mentioned refer to the investment by such corporations of their funds in buying and improving real estate and leasing it in order to obtain an income. (§ 4.)

In 1901 the Tax Law was again before us and a claim was made of exemption by special statute, but we held that it "was such a revision and substitute for all former statutes, general and special, upon the subject of exemption from taxation as to supersede and repeal them by implication, thus repealing, among others, the provisions of the special acts which exempted the property of *The Roosevelt Hospital* and the Children's Aid Society, and taking from these societies their special exemptions and leaving them in the class enumerated in subdivision seven, section four of the Tax Law." (*Matter of Huntington*, 168 N. Y. 399, 404; L. 1864, ch. 4, § 3.)

The appellant in the case now before us was one of the respondents in the case last cited, and the language quoted was used with reference to the self-same charter now relied upon to exempt it from the tax in question. In their return to the writ of certiorari herein the respondents state, "that in

*The Matter of Huntington* (168 N. Y. 399) the Court of Appeals held, in a proceeding wherein this relator was respondent and the Comptroller of the City of New York was appellant, that none of the property of this relator is exempt from taxation except under subdivision seven, section four of the Tax Law. (Laws 1896, chap. 908.)" The judgment roll in that case was read in evidence upon the trial of this proceeding.

In 1905 we again reviewed the Tax Law and held that it repealed the exemption clause of a special statute, which incorporated an educational institution and exempted its property from local taxation. (*Pratt Institute* v. *City of New York*, 183 N. Y. 151; L. 1887, ch. 398.)

According to the record in that case, it was admitted by the demurrer to the complaint that the special act of 1887, then relied upon, was passed upon the application of Charles Pratt, the founder of the Pratt Institute, and the submission by him of plans he had formulated to the legislature; and, as it was further admitted, in reliance upon such charter " and upon the compact so made between the State of New York and " the corporation so organized, he promptly endowed the latter with real and personal property of great value. While all its personal property was held to be exempt, as well as all its real property used directly in its educational work, that which was leased for the purpose of revenue was held not exempt, because the Tax Law had repealed the exemption clause of its charter. The construction adopted in *Matter of Huntington* (*supra*) was indorsed and reaffirmed. Referring to the Tax Law we declared that : " Thus the legislature made all property taxable, except such as is exempt, and in declaring what is exempt it covered the case of educational institutions, such as the plaintiff, exempting all their personal property absolutely, and so much of their real estate as is used exclusively for carrying out thereon one or more of the corporate purposes, but not exempting real estate held as an investment only, even if the income was used for a corporate purpose. A general rule of taxation and exemption was laid

down after the revisers, as they expressly declared, had gone over the entire field of statutory law relating to the subject. It was the apparent purpose of this legislation to define the status with reference to taxation or exemption from taxation of every parcel of real property and every article of personal property in the state. It furnished a plain and simple rule for all assessors by which they could at once determine whether property within their district was subject to taxation or not, without searching the statutes for nearly seventy years for special exemptions. It is a codifying act, designed to reduce all statutes relating to taxation into a complete and harmonious system. A codifying act is presumed to exhaust the subject to which it relates, unless a different intention appears on the face of the statute, or is an irresistible inference from special circumstances. The new enactment is substituted in the place of all statutes previously existing and becomes the sole rule of action." (P. 156.)

In 1907, for the fourth time, we considered the effect of the Tax Law upon special statutes providing exemption from taxation, and in the case then under consideration the form of the deed of endowment was prescribed in the charter itself, which expressly commanded that " The premises and property mentioned in the said deed, and which shall at any time belong to or be held in trust by the corporation hereby created, or the trustees thereof, including all endowments made to it, shall not, nor shall any part thereof, be subject to taxation while the same shall be appropriated to the uses, intents and purposes hereby and in the said deed provided for." Yet we held but twelve months ago that even that clause of exemption, enacted under circumstances showing with peculiar force the absolute and sweeping intention of the legislature, was lawfully repealed under its reserved power by the Mortgage Tax Act as to mortgages held by said institution, although no special statute was repealed by direct mention thereof. (*People ex rel. Cooper Union* v. *Gass*, 190 N. Y. 323; L. 1859, ch. 279, section 11.)

Thus four times since the passage of the Tax Law, twelve

204 People ex rel. Roosevelt Hospital *v.* Raymond. [Jan.,

Dissenting opinion, per Vann, J.          [Vol. 194.

years ago, we have decided cases involving exemptions under special statutes, one of which was the charter of the Roosevelt Hospital, the present appellant, and we decided them all wrong if the views expressed in the prevailing opinion are correct and the principles there laid down are to become the law of the state of New York. While an elaborate attempt is made to distinguish the case under consideration from those cited, there is no distinction in fact. How can there be when the present appellant was a party to one of those cases and, represented by able counsel, based its claim to exemption on the same act that it now invokes for protection against taxation? Even if, as it is claimed, peculiar features distinguish the incorporation and endowment of other institutions from those of the Roosevelt Hospital, no peculiar features can distinguish the Roosevelt Hospital from itself. Courts cannot create a distinction by declaring there is one, any more than they can make white black by adjudication. The right hand may be distinguished from the left, but it cannot be distinguished from itself. Independent of the doctrine of *stare decisis,* the principle of *res adjudicata* is controlling, for in both the *Huntington* case and this case we had before us the same parties, their successors or privies, the same facts, the same will and the same statute. The same question was presented, the same principles were involved and the same decision should be made. (*Pratt Institute* v. *City of New York, supra,* p. 159.) While it is conceded that the legislature had power to repeal and intended to repeal the exemption provisions in nearly all of the various special charters considered by us in the cases cited, it is insisted that it did not intend so to do in the case of the Roosevelt Hospital, but as we held in 1901 that it did so intend as to the charter of that identical institution, how can we hold in 1908 that it had no such intention? The legislature of one generation cannot mortgage the right of the legislature of another generation to pass a general and uniform statute regulating the entire subject of taxation and exemption throughout the state. (*People ex rel. Cooper*

*Union* v. *Gass*, 190 N. Y. 323.)   Thus far we have held and I vote to still hold that the legislature of 1896 had the power to repeal and intended to repeal the special exemption clause in the charter of the Roosevelt Hospital granted in 1864.

The order appealed from should be affirmed, with costs.

Cullen, Ch. J., Haight and Willard Bartlett, JJ., concur with Gray, J.; Hiscock and Chase, JJ., concur with Vann, J.

Order reversed, etc.