PEOPLE ex rel. CITY OF OSWEGO v. BOARD OF ASSESSORS OF TOWN OF OSWEGO.

(Supreme Court, Special Term, Oswego County. March 25, 1911.)

1. TAXATION (§ 217*)—PROPERTY EXEMPT FROM TAXATION—PROPERTY OF MUNICIPAL CORPORATIONS.

At common law, the property of a municipal corporation devoted to a public use was exempt from taxation, though situated without the corporate limits.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 355, 356; Dec. Dig. § 217.*]

2. TAXATION (§ 217*)—PROPERTY EXEMPT FROM TAXATION—PROPERTY OF MUNICIPAL CORPORATIONS.

A city charter, authorizing the purchase of land in or out of the city and erecting thereon an almshouse, and providing that the land when purchased and the buildings erected thereon shall not be subject to taxation, exempts from taxation land outside of the city and the buildings erected thereon, and the exemption is intended to be perpetual.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 355, 356; Dec. Dig. § 217.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. TAXATION (§ 197*)—PROPERTY SUBJECT TO TAXATION—STATUTES—REPEAL.

Tax Law (Laws 1896, c. 908; Consol. Laws 1909, c. 60) §§ 3, 4, subd. 5, making all real property taxable unless exempted by law, and exempting from taxation the property of a municipal corporation except the portion not within the corporation, and exempting from taxation all property exempt by law from execution, does not impliedly repeal the charter of a city authorizing the purchase of land within or without the city, and the erection of buildings thereon for an almshouse, and exempting the land and buildings erected thereon located without the city from taxation, and from sale under execution, and such property remains exempt from taxation.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 315, 316; Dec. Dig. § 197.*]

4. CONSTITUTIONAL LAW (§ 127*)—IMPAIRMENT OF OBLIGATION OF "CONTRACT" —CHARTERS OF MUNICIPAL CORPORATIONS.

· The charter of a municipal corporation is not a contract within the Constitution prohibiting the impairment of the obligation of contracts, and the Legislature retains authority to amend or repeal municipal charters independent of special statutes or constitutional reservations, and may enlarge or curtail the powers, privileges, or exemptions granted by the charter.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 325– 341; Dec. Dig. § 127.*

For other definitions, see Words and Phrases, vol. 2, pp. 1513–1534; vol. 8, pp. 7615, 7616.]

5. TAXATION (§ 217*)—ACTS OF GOVERNMENTAL CHARACTER.

The act of a city owning and maintaining an almshouse as authorized by its charter is of a purely governmental and public character.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 355, 356; Dec. Dig. § 217.*]

6. TAXATION (§ 191*)—POWER TO EXEMPT.

The Legislature may authorize a municipal corporation to acquire property outside of its limits for an almshouse and exempt such property from execution.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 307, 308; Dec. Dig. § 191.*]

7. TAXATION (§ 251*)—ASSESSMENTS—CERTIORARI—REVIEW—COSTS.

Where the assessors of a town did not act with gross negligence or in bad faith or with malice, in assessing exempt property within its limits belonging to a city, but acted in pursuance of the advice of the state board of tax commissioners, the court on vacating the assessment on certiorari on the relation of the city may not, under Tax Law (Laws 1896, c. 908; Consol. Laws 1909, c. 60) § 294, award costs against the assessors.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 343–345; Dec. Dig. § 251.*]

Certiorari by the People, on the relation of the City of Oswego, against the Board of Assessors of the Town of Oswego to review an assessment. Assessment vacated.

John R. Pidgeon, for relator.
Spencer Brownell, for respondent.

MERRELL, J. This is a proceeding to review by certiorari an assessment made by the assessors of the town of Oswego on the 15th day of September, 1910, assessing the almshouse property of the city of Oswego, which is situated without the city limits and within the town

of Oswego. The property assessed consists of about 137 acres of land with buildings thereon and was assessed at $25,000.

It is claimed by the city of Oswego that its almshouse property is exempt from taxation by reason of the provisions of the amended city charter, granted by the Legislature in 1895, and which substantially and in effect re-enacted, so far as this almshouse is concerned, the charter of 1866.

The respondent contends that the Tax Law passed in 1896, being chapter 908 of the laws of that year, and which took effect June 15, 1896, and is now found in chapter 60 of the Consolidated Laws, repealed, either expressly or by implication, the provision of the city charter exempting from taxation the property in question.

There seem to be two points in the case to be determined: First, has the Legislature repealed, either expressly or by implication, that portion of the amended city charter of Oswego granted in 1895 exempting the almshouse property from taxation? And, second, if so, was the act of 1896, in so far as it affected the property in question and the city of Oswego, within the constitutional powers of the Legislature?

By chapter 471 of the Laws of 1866 the charter of the city of Oswego was amended by adding thereto several sections, among which was section 17, which reads as follows:

"Sec. 17. The commissioners of public charity of the city of Oswego may maintain the hospital now erected on lands in the Second ward of said city, and may purchase other lands in or out of said city, the title to which shall be taken in the name of the city of Oswego, and may erect thereon an almshouse, and may appoint officers and servants for the government and management of said almshouse, and may regulate their powers and duties as they shall judge expedient. They shall have exclusive control of the said lands when purchased and of the buildings erected thereon, and the same shall not be levied on or sold by virtue of any *warrant or execution* nor be subject to taxation for any purpose whatever."

Thereafter the city of Oswego built its almshouse upon the lands in question, and has since used the same as such, together with the farm and lands in connection therewith, and while the proofs do not fully disclose, yet I assume said lands have been farmed by said city and by the aid of the inmates, according to the usual custom in cases where a farm is maintained in connection with an almshouse or home for indigent poor supported by a municipality.

In 1895 the charter of the city of Oswego was revised and re-enacted by chapter 394 of the laws of that year, and the department of charity, a city department composed of four commissioners and their assistants, was directed to maintain the city almshouse on the premises in question, and by section 225 substantially re-enacted and continued the provisions of the former section of the charter relating to the lands in question. The section reads:

"Sec. 225. The department of charity shall maintain the city almshouse now erected on lands in the town of Oswego, and may appoint a keeper of the city almshouse and may employ such other persons for the government and management of said almshouse and lands as shall be necessary and may regulate their powers and duties. It shall have exclusive control of the said lands and of the buildings erected thereon, and the same shall not be levied on or sold by virtue of any warrant or execution, nor be subject to taxation for any purpose whatever."

[1] Under the common law the property of a municipal corporation devoted to a public use was not subject to taxation even though situated without the corporate limits. City of Rochester v. Town of Rush, 80 N. Y. 302; People ex rel. v. Bd. Assessors, 111 N. Y. 505, 19 N. E. 90, 2 L. R. A. 148; People ex rel. City of Amsterdam v. Hess, 157 N. Y. 42, 51 N. E. 410.

[2] It is therefore apparent that, although the common law and the recent decisions of the courts protected and exempted the premises in question from taxation, the Legislature by the enactments of 1866 and 1895 raised additional guards against taxation and sale under or by virtue of a *warrant or execution*, which evidently was intended to be perpetual.

[3] On June 15, 1896, the Tax Law, being chapter 908 of the laws of that year, went into effect, as above noted, and the respondent claims that it repealed the exemption clauses of the charter of the city of Oswego relating to the almshouse premises. Sections 3 and 4 of the Tax Law, so far as relevant here, read as follows:

"Sec. 3. Property liable to taxation. All real property within this state and all personal property situated or owned within this state, is taxable unless exempt from taxation by law.

"Sec. 4. Exemption from taxation. The following property shall be exempt from taxation: (1) Property of the United States. (2) Property of this state other than its wild or forest lands in the forest preserve. (3) Property of a municipal corporation of the state held for a public use, including real property held or used for cemetery purposes, and all lots and plots therein conveyed by the municipal corporation as places for the burial of the dead, *except the portion of* municipal property not within the corporation. (5) All property exempt by law from execution other than exempt homestead."

Upon examination of the statute it is evident that the Tax Law of 1896 does not expressly repeal that portion of the charter of the city of Oswego exempting the almshouse premises from taxation, and we therefore come to the questions whether or not there is an implied repeal, and, if so, is such repeal repugnant to our state and federal Constitutions and in violation of existing contractual obligations and rights.

It would seem to be the contention of the relator that the city of Oswego, acting upon the guaranty of the Legislature contained in its charter that the almshouse property should not be subject to taxation, purchased its site and built its almshouse outside the corporate limits of the city and in the town of Oswego, and that any repeal of that provision of its charter to the end that those premises might be taxed is in effect a violation of existing contractual obligations, and therefore unconstitutional, and that in view of these facts the court should not imply such a repeal of the city charter.

Several times since the Tax Law of 1896 went into effect the Court of Appeals of this state has passed upon the question of the implied repeal of special statutes exempting corporations from taxation, and that court has uniformly held that the Tax Law of 1896 "was such a revision of and substitution for all former statutes, general and special, upon the subject of exemption from taxation, as to supersede and repeal them by implication." Matter of Huntington, 168 N. Y. 399, 61 N. E. 643; People ex rel. Cooper Union v. Wells, 180 N. Y. 537, 72

N. E. 1147; Pratt Institute v. City of New York, 183 N. Y. 151, 75 N. E. 151, 5 Ann. Cas. 198; People ex rel. Cooper Union v. Gass, 190 N. Y. 323, 83 N. E. 64, 123 Am. St. Rep. 549, 13 Ann. Cas. 678.

The single exception to the application of the above rule appears in the case of People ex rel. Roosevelt Hospital v. Raymond, 194 N. Y. 189, 87 N. E. 90, in which the Court of Appeals attempts to distinguish that case from the many other similar cases decided under the general rule. Conceding that the Roosevelt Hospital Case was based upon sound reasoning as applied to the peculiar facts in that case, it cannot be claimed to be authority for any general proposition or rule, as the distinction made was very narrow and one which should, it seems to me, be applied with great caution. The court held in that case that by reason of the peculiar circumstances attending the granting of the charter of Roosevelt Hospital the court would not presume that the Legislature by the General Tax Law of 1896 intended to repeal that portion of its charter exempting it from taxation.

The relator seeks to bring itself within the exception to the general rule applied in the Roosevelt Hospital Case, and claims that by reason of the granting of the city charter and the subsequent purchase by the city of Oswego of the premises in question and the erection of its almshouse the court should not presume that the Legislature intended to repeal the exempting clause of the city charter by the act of 1896. The Roosevelt Hospital Case, however, is not analogous to the case at bar. In that case the Legislature enacted a charter proposed by the executors of the Roosevelt estate, and which resulted in the turning over to that corporation of the vast sums left by James H. Roosevelt to the institution, in the event of the granting by the state of a liberal charter. The charter, after enactment, was formally accepted by the executors and the endowment paid—an entirely different state of facts than those of the case at bar.

[4] There is also a stronger presumption of an implied repeal of a charter against a municipal corporation than as against a charitable, educational, or private corporation. The courts have often held that the charter of a municipal corporation, enacted by the Legislature, is not a contract contemplated by the constitutional provisions prohibiting the impairment of the obligation of contracts, and the Legislature retains full authority to amend or repeal municipal charters, independent of special statutes or constitutional reservations, and can enlarge or curtail the powers, privileges, or exemptions granted by the charter.

In Covington v. Kentucky, 173 U. S. 241, 19 Sup. Ct. 387 (43 L. Ed. 679), in delivering the opinion of the court, Mr. Justice Harlan says:

"A municipal corporation is a public instrumentality established to aid in the administration of the affairs of the state. Neither its charter nor any legislative act regulating the use of property held by it for governmental or public purposes is a contract within the meaning of the Constitution of the United States. If the Legislature chose to subject to taxation public property held by a municipal corporation of the state for public purposes, the validity of such legislation, so far as the national Constitution is concerned, could not be questioned." New Orleans v. New Orleans Waterworks Co., 142 U. S. 79, 12 Sup. Ct. 142, 35 L. Ed. 943; Demarest v. Mayor, 74 N. Y. 161; People ex rel. Devery v. Coler, 173 N. Y. 103, 65 N. E. 956; Wilcox v. McClennan, 110 App. Div. 378, 97 N. Y. Supp. 311.

Judge Cooley on Constitutional Limitations says, in reference to a municipal corporation:

"The rights and franchises of such a corporation, being granted for the purpose of the government, can never become such vested rights as against the state that they cannot be taken away; nor does the charter constitute a contract in the sense of the constitutional provision which prohibits the obligation of contracts being violated."

The reserved powers of the state of New York to alter, amend, or repeal charters, as expressed in 1 R. S. p. 600, § 8, passed in 1828, and in the state Constitution, article 8, § 1, which enactments were the direct result of the decision of the United States Supreme Court in the Dartmouth College Case (Lord v. Equitable Life Assurance Society, 194 N. Y. 212, 87 N. E. 443, 22 L. R. A. [N. S.] 420), are therefore doubly applicable to municipal charters, and no reason appears for even attempting to bring the case at bar within the exception suggested and applied in the Roosevelt Hospital Case.

[5] I think that the acts of the city of Oswego in owning and maintaing its almshouse property are of a purely governmental and public character. I should therefore hold that there was an implied repeal of that portion of the charter of the city of Oswego in question, and that such repeal was lawful and constitutional by reason of the powers reserved in the state, and that such repeal in no wise impairs the obligation of any contract, either express or implied, were it not for another feature of the case which seems to have been entirely overlooked by counsel, and which appears to be vital to the proper determination of the case. By section 4, subd. 5, of the Tax Law above quoted all property *exempt by law from execution* is specifically exempted from taxation. Can there be any question but that the almshouse premises in question are exempt from execution by virtue of the provisions contained in the charter of the city of Oswego? The charter specifically provides in regard to this property that "the same shall not be levied on or sold by virtue of any warrant or *execution.*" It is quite apparent that the property in controversy is exempt from execution by special enactment of the Legislature, and is therefore exempt from taxation under section 4, subd. 5, of the Tax Law, which exempts from taxation all property "exempt by law from execution."

[6] That exemption from execution is permissible by a special provision of law, as the above quoted provision of the Oswego charter cannot be questioned. It is recognized by section 1389 of the Code of Civil Procedure relative to special exemptions, which provides:

"Sec. 1389. Certain special exemptions not affected by this article. (Property exempt from levy and sale by virtue of execution.) The enumeration in this article of the property which is exempt from levy and sale by virtue of an execution does not repeal any special provision of law relating to such an exemption which, by its terms, is applicable to a particular class of persons or corporations, or to a particular locality, or otherwise to a special case."

And in view of section 4, subd. 5, it cannot be held that there is an implied repeal of that portion of the charter of the city of Oswego in question, and the mere fact that the Legislature failed to exempt municipal property held for a public use not within the corporation does not avail to alter the express provision of section 4, subd. 5, which is a

part of the identical act which the respondent contends worked a repeal of the charter provision.

The fact that the property assessed by the assessors of the town of Oswego is exempt from execution clearly brings the case within section 5 of the Tax Law. The almshouse premises of the city of Oswego is therefore "exempt from taxation by law."

The assessment for taxation complained of should therefore be vacated.

[7] The proofs do not disclose that the assessors of the town of Oswego acted with gross negligence or in bad faith or with malice in making the assessment, but, rather, it would appear that they acted in pursuance of the advice of the state board of tax commissioners. Therefore, under the provisions of section 294 of the Tax Law, no costs should be awarded the relator against the respondent. ·