THE PEOPLE OF THE STATE OF NEW YORK ex rel. COOPER UNION FOR THE ADVANCEMENT OF SCIENCE AND ART, Appellant, v. JAMES J. SEXTON, President, and Others, as Commissioners of Taxes and Assessments of the City of New York, Constituting the Board of Taxes and Assessments of the City of New York, Respondents.

First Department, May 1, 1936.

*John W. Davis* of counsel [*Tom Garrett* and *James A. Sweet* with him on the brief; *Davis, Polk, Wardwell, Gardiner & Reed,* attorneys], for the appellant.

*William C. Chanler* of counsel [*William S. Gaud, Jr.,* with him on the brief; *Paul Windels, Corporation Counsel,* attorney], for the respondents.

McAvoy, J. The relator was incorporated in 1859 pursuant to special act of the Legislature (Laws of 1859, chap. 279) enacted at the request of Peter Cooper. The statute in question provided, among other things, that Peter Cooper might convey certain land upon the trusts and subject to the conditions and restrictions contained in a deed, which was set forth at length in the statute, and that the corporate existence of Cooper Union should commence upon such conveyance. Section 6 of the statute provided that the corporation was authorized to accept and " to hold the premises and property therein mentioned, including all endowments at any time to be made to the said corporation, subject to the conditions and restrictions created in said deed; and to, for and upon the uses, intents and purposes therein provided."

Section 7 relates, among other things, to the receipt by the corporation of endowments and authorizes the corporation to appropriate the same to the uses, intents and purposes contemplated in the deed and in the statute.

Section 11 of the statute provides: " The premises and property mentioned in the said deed, and which shall at any time belong to or be held in trust by the corporation hereby created, or the trustees thereof, including all endowments made to it, shall not, nor shall any part thereof, be subject to taxation while the same shall be appropriated to the uses, intents and purposes hereby and in the said deed provided for."

In 1902 Edward Cooper and Sarah Amelia Hewitt, together with the trustees of Peter Cooper, conveyed the property here involved, located at Forty-second street and Lexington avenue, to Cooper Union. The deed provided that the property was conveyed " for the purpose of constituting an endowment to the party of the second part [Cooper Union] for its uses, intents and purposes."

In 1902 and for some years thereafter the property was occupied by tenants of the relator and the property was used for hotel and apartment purposes. In 1911 certain improvements were made upon the property by the then lessee, and in July, 1928, a new lease of the property was executed by the relator to the Reylex Corporation, which subsequently assigned the same to W. P. Chrysler Building Corporation, the present lessee. Under the last lease,

the improvements on the property belonged to the lessor. The term of the lease is for twenty-five years, with renewals totaling forty-two years. The rent reserved consists of two divisions: *First,* a basic rate of a fixed sum per annum varying from $26,000 to April 30, 1930, to $330,000 from May 1, 1942, to maturity; and *second,* a so-called " tax equivalent," which is described as additional rent and which is an amount equivalent to what the tax would have been if the property were not exempt.

Soon after the property was acquired by the relator, the city of New York assessed the same for taxation for the year 1903. The relator filed a petition for a writ of certiorari to review that assessment. The trial court granted the petition of the relator and struck the assessment from the rolls, and that order was affirmed by this court and also by the Court of Appeals. (*People ex rel. Cooper Union* v. *Wells,* 98 App. Div. 623; 180 N. Y. 537.) No further attempt was made to assess the property until the assessment for the year 1931, here under review, was made. The assessment fixed the taxable value of the real estate at $12,500,000, exempting the real estate unimproved, which was valued at $6,000,000, and assessing the building alone at $12,500,000. This was on the theory that the building was not owned by the relator and not used for the purposes of the relator. The relator applied to the board of taxes and assessments for cancellation of the assessment and the board reduced the assessment from $12,500,000 to $12,000,000. Upon the refusal of the commissioners of taxes and assessments to cancel the assessment this proceeding was instituted. The relator contends that the ruling mentioned *supra* (*People ex rel. Cooper Union* v. *Wells*), adjudicates forever the exemption of this identical land.

The city contends that the proceeding to review the 1903 assessment entitled *People ex rel. Cooper Union* v. *Wells* (*supra*) is not *res adjudicata* of the case at bar and urges that the doctrine of *res adjudicata,* if applicable to tax certiorari at all, is not an absolute bar, but only constitutes an estoppel as to those issues that are proved to have been in fact litigated and determined in the prior proceeding; that the issue raised by the present assessors was not and could not have been raised, litigated or passed upon in the *Wells* case, because there the assessors failed to controvert the erroneous allegation that the property came from Peter Cooper. The city urges too that the exemption in the special act of 1859, *supra,* did not survive the General Tax Law of 1896, *infra,* so as to apply to this property. It is argued that it is clear from both the pleadings and proof in this proceeding that the property in question did not derive directly from Peter Cooper; that the law is clear that an exemption in a special act is repealed by the General Tax Law

of 1896 in so far as it purports to apply to a subsequent endowment not made by the founder. The city finally contends that the case of *People ex rel. Roosevelt Hospital* v. *Raymond* (194 N. Y. 189) disposes of the plea of *res adjudicata;* that the rule laid down in the *Raymond* case is both logical and constitutional and sustains the right of the assessors to hold the property subject to the tax.

In 1896 the General Tax Law was passed and re-enacted in 1909. Under the General Tax Law (Laws of 1896, chap. 908, § 4) it is provided:

" The following property shall be exempt from taxation: * * *

" 7. The real property of a corporation or association organized exclusively for the moral or mental improvement of men or women, or for religious, bible, tract, charitable, benevolent, missionary, hospital, infirmary, educational, scientific, literary, library, patriotic, historical or cemetery purposes, or for the enforcement of laws relating to children or animals, or for two or more such purposes, and used exclusively for carrying out thereupon one or more of such purposes."

Concededly the property here involved is not used exclusively for carrying out thereupon the corporate purposes of Cooper Union and is not within the exemption granted by the Tax Law. It has been held that the Legislature intended by the passage of the General Tax Law to repeal prior general laws which also dealt with the subject of taxation. It has been pointed out, however, that a distinction must be drawn between general laws and special acts on the subject of exemption. In the prior litigation involving the assessment on this property Judge BISCHOFF pointed out that the implied repeal by the General Tax Law had to do only with exemptions created as an act of grace — characterized sometimes as " spontaneous concession " in distinction from matters of actual agreement. In instances where it did not appear that any contract had been made for tax exemption between the State and an institution, the courts have refused to continue exemption. An example of that is found in *Pratt Institute* v. *City of New York* (183 N. Y. 151). It appears that Pratt Institute had been organized by a special act conferring tax exemption upon its property; the institute owned real property, the revenues of which were used for its corporate purposes; the property itself, however, was not used for carrying out thereupon the corporate purposes of the institute and hence was not exempt within the provisions of the Tax Law of 1896 itself; the action was brought to cancel an assessment levied upon the property as a cloud on its title and the defendant demurred, urging that the complaint did not state facts sufficient to constitute a cause of action; the demurrer was sustained and the order was affirmed, it being held that the case was within

the general rule to the effect that the Tax Law was intended by the Legislature to work a repeal of prior tax statutes. This was an example of an exemption created as an act of grace. There was no exemption granted as a special inducement for either the creation of the institute or the transfer to it of property, as is the situation with reference to Cooper Union. In the *Raymond Case (supra)*, upon which the city relies, it was said: " It will not do to hold that the reserved power to alter, or to repeal, a charter has been exercised by implication in a case, where to do so will result in the violation of a promise by the State, through which the conveyance of the property was induced to a domestic benevolent corporation; which, except for the promise, might have been given outside of the State. In such a case, I do not think that we should presume that the Legislature intended to commit so gross a breach of faith."

The General Tax Law of 1896 does not specifically repeal the exemption granted to the Cooper Union and such repeal will not be implied.

We conclude that the question here presented has been rendered *res adjudicata* by the decision in *People ex rel. Cooper Union* v. *Wells* (180 N. Y. 537). It is not true, as urged by the city, that it was contended in the prior litigation that the property here involved was conveyed by Peter Cooper's trustees to the union pursuant to the terms of a trust set up by the founder. The facts before the court in the prior litigation were exactly as they are here.

It is true that in *Keokuk & Western R. Co.* v. *Missouri* (152 U. S. 301) it is said that a suit for taxes for one year is not an estoppel to a suit for taxes for a different year. That, however, was not necessary to the decision of the question before the court and, of course, questions of value vary from year to year and a determination with reference to certiorari in one year would not necessarily be binding the following year. There is not raised here the question as to value, but the fundamental question as to the right to assess. That question was determined adversely to the city in the prior litigation and the city is bound thereby. *Finem litis lex requirit.*

The order appealed from should be reversed, with twenty dollars costs and disbursements, the writ of certiorari sustained, and the assessment directed to be canceled.

MARTIN, P. J., O'MALLEY and UNTERMYER, JJ., concur.

Order unanimously reversed with twenty dollars costs and disbursements, the writ of certiorari sustained, and the assessment directed to be canceled. Settle order on notice.