THE PEOPLE OF THE STATE OF NEW YORK ex rel. TRUSTEES OF THE MASONIC HALL AND ASYLUM FUND, Respondent, *v.* WILLIAM STANLEY MILLER and Others, Constituting the Board of Taxes and Assessments of the City of New York, Appellants.

First Department, April 14, 1938.

*Edward J. McGratty, Jr.,* of counsel [*Oscar S. Cox* with him on the brief; *William C. Chanler, Corporation Counsel,* attorney], for the appellants.

*John A. Dutton,* for the respondent.

UNTERMYER, J. The relator is a fraternal corporation created by special act of the Legislature in 1864 (Laws of 1864, chap. 272). By that act it was endowed with power to build and maintain a

Masonic hall for the meetings of the Grand Lodge or general assembly of Masons, and for the accommodation of other Masonic bodies. Out of the funds derived from the rent or income from these sources it had power to build and maintain an asylum or school for the free education of the children of Masons and for the relief of worthy and indigent Masons, their widows and orphans. By chapter 503 of the Laws of 1873, as well as by subsequent legislation, these powers were extended to permit the relator to lease portions of its real property for commercial purposes. When so leased, however, the entire net income was required to be applied, and has always been applied, to the asylum which the relator maintains near the city of Utica.

The premises which are the subject of this proceeding are situated on Twenty-third and Twenty-fourth streets at or near Sixth avenue in the city of New York. The portion of these premises which is situated on Twenty-third street was purchased by the relator in 1868 and upon it, shortly thereafter, the relator began the erection of a building, which was completed in 1875. In 1905 the relator purchased property on Twenty-fourth street in the rear of the Twenty-third street premises, upon which, in 1907 and 1908, it erected a building connecting with the buildings on Twenty-third street, so as to form one integral structure covering both lots, the combined cost of which was, approximately, $2,700,000. Both buildings were thereafter used partly for the accommodation and meeting of the Grand Lodge, its subordinate lodges and other Masonic bodies, but, in part, were rented to tenants for commercial purposes.

In 1871 there was enacted a special law (Laws of 1871, chap. 249) which it is contended exempted the property on Twenty-third and Twenty-fourth streets from taxation. So ambiguous are the terms of this act that it is very doubtful whether it exempted from taxation the asylum situated at Utica or whether it was intended also to include the relator's real property situated in New York city. It is unnecessary, however, to consider that question, for in our opinion the special act of 1871 was repealed by the General Tax Law of 1896, as amended (*Matter of Huntington*, 168 N. Y. 399), which was enacted " to establish a system which should place exemptions of the real property of charitable corporations upon a basis of clearly defined equity, free from the unsystematic partialities of special favoritism." (*People ex rel Catholic Union* v. *Sayles*, 32 App. Div. 203; affd., 157 N. Y. 679.) We think the present case does not fall within the exception stated and applied in *People ex rel. Roosevelt Hospital* v. *Raymond* (194 N. Y. 189);

*People ex rel. Cooper Union* v. *Wells* (98 App. Div. 623; affd., 180 N. Y. 537) and *People ex rel. Cooper Union* v. *Sexton* (247 App. Div. 371; affd., 273 N. Y. 462), where the General Tax Law was held not to repeal an exemption from taxation, embodied in the charter, by means of which the Legislature had induced a conveyance of property to the institution. The relator is not brought within that exception by the fact that it completed the construction of the building on Twenty-third street after the enactment of the special act of 1871 and before the enactment of the General Tax Law of 1896. The case merely presents the usual situation of a fraternal or charitable corporation which has applied its funds to the execution of its general corporate purposes under the benefit of an exemption from taxation which has been repealed.

The remaining question is whether the relator's real property in New York city is wholly exempt under subdivision 6 of section 4 of the Tax Law, which provides: " the real property of any fraternal corporation, association or body created to build and maintain a building or buildings for its meeting or meetings of the general assembly of its members, or subordinate bodies of such fraternity and for the accommodation of other fraternal bodies or association, the entire net income of which real property is exclusively applied or to be used to build, furnish and maintain an asylum or asylums, a home or homes, a school or schools, for the free education or relief of the members of such fraternity or for the relief, support and care of worthy and indigent members of the franternity, their wives, widows or orphans, shall be exempt from taxation."

The assessment under consideration here is upon so much of the property as the relator does not use for Masonic purposes but which it leases for commercial purposes and from which it derives rent. Of the 265,213 square feet of rentable space in the combined structures, 90,089 square feet are devoted to Masonic uses, 155,440 square feet are vacant and 19,684 square feet, are used for commercial purposes. In denying the relator's application for complete exemption from taxation, the board of taxes and assessments considered the property to be subject to taxation to the extent that it is used for commercial purposes. Accordingly, on this appeal the defendants are not in a position to dispute, and do not dispute, the propriety of the exemption to the extent that it was allowed nor does the relator appear to complain of the accuracy of the apportionment. The only question presented is whether the premises are entitled to *complete* exemption from taxation.

We think the relator is not entitled to complete exemption under the Tax Law and that accordingly the order sustaining the writ of certiorari and vacating the assessments for the year 1935 should be

reversed and the writ dismissed. In considering that question it must be remembered that " the general policy of the law in cases of this character is to require all to bear in just proportion the burdens of government and, therefore, to construe strictly statutes exempting property from taxation by denying exemptions which depend on doubtful implications." (*Matter of Kennedy*, 240 App. Div. 20.) Applying that principle to the present case it is by no means clear that so much of the relator's property as it leases for commercial purposes is exempt from taxation, even though the income thus derived is applied exclusively to the home or asylum which it maintains at Utica. In order to be entitled to complete exemption the real property must, we think, be completely used for the purposes specified in the statute and that it is not sufficient if a part only is devoted to those purposes. Otherwise it would inevitably follow as a matter of statutory construction that the real property of such a fraternal organization would be entitled to complete exemption, even though only a small fraction were dedicated to the purposes specified in the Tax Law. It is not to be thought that the Legislature intended that result. This question, moreover, was considered and decided by the Court of Appeals in *B' Nai B'Rith Club, Inc.*, v. *City of New York* (270 N. Y. 12), where it was held that one of the conditions necessary to entitle such an organization to exemption was that the property be used *exclusively* for meetings of the general assembly of its members or of its subordinate bodies. The court said: " The property is not used exclusively for charitable or benevolent purposes, *and it is not used exclusively for meetings*, and the net income is not used exclusively to build and maintain a home for the members of the corporation; therefore, the real property is not exempt under the second part of section 4, subdivision 6."

We recognize, of course, the worthy purposes for which the relator maintains the home or asylum at Utica and to the support of which the net income of its property on Twenty-third and Twenty-fourth streets is dedicated. No doubt this entitles the asylum property to exemption from taxation under section 4 of the Tax Law. (Compare *People ex rel. Trustees of Masonic Hall* v. *Farrell*, 130 Misc. 142.) A very different question is presented when it is sought to extend that exemption to the relator's real property in New York city leased for commercial purposes in competition with other owners of real estate. Such a double immunity from taxation has not generally been accorded to other charitable organizations. To accomplish that result we would expect the Legislature to have used language free from doubt or ambiguity, for, as the court observed in *People ex rel. Mizpah Lodge* v. *Burke* (228 N. Y. 245), " So long

as the State has not clearly indicated its deliberate purpose to look with special favor upon the use of lodge property for all the purposes that relator uses its property for, we may not construe the law for its benefit." We find no such language here.

The final order sustaining the writ of certiorari and vacating the assessments for the year 1935 should be reversed, with twenty dollars costs and disbursements, and the writ dismissed.

MARTIN, P. J., COHN and CALLAHAN, JJ., concur; DORE, J., concurs in result.

Order unanimously reversed, with twenty dollars costs and disbursements, and the writ dismissed. Settle order on notice.