Dore, J.
In an action to cancel assessments on real estate upon church premises at 218-220 West 130th Street, in the borough of Manhattan, city of New York, from 1921 to 1927, Special Term after a trial, in which there was no dispute of essential facts, has held the church property (although used exclusively for religious purposes by a local religious congregation) is not exempt from real estate taxes. The ruling was made solely on the ground that during the period involved legal title in the property was in a religious corporation, the parent church, organized under the laws of Arkansas.
When the property was originally bought a group of persons organized themselves under the name of plaintiff “ Williams Institutional Colored Methodist Episcopal Church ”, as a congregation of that denomination, subject to its ritual and discipline. As the parent church, an Arkansas corporation, originally financed the purchase of the property, title was for the period in question held in its name. But during all that period the premises concededly were exclusively used as a place of public religious worship by the local New York congregation consisting of citizens and inhabitants of New York City. All payments of principal and interest on the mortgage on the property, as well as all other carrying charges, have been paid by and were and are under the church’s articles the primary obligation of the local congregation. If taxes were paid or should now be found to be due such taxes would also be the obligation of the local congregation, Williams Institutional Church, a domestic corporation, now and since January 25, 1926, the holder of legal title. The domestic corporation took title after repaying part of the funds advanced by the parent church for the purchase of the property.
Appellant contends the premises in question are clearly within the language of the Tax Law exempting from taxation real estate used exclusively for religious purposes. We think appellant’s contention is supported by the language and intent of the statute and by the controlling authorities and that the judgment appealed from should be reversed.
Authority to tax real estate is found in section 3 of the Tax Law which reads: ‘ ‘ All real property within this state is taxable unless exempt from taxation by law. * * * ”
Exemptions are covered by the following section which so far as relevant reads as follows:
“ 4. Exemption from taxation.
“ The following property shall be exempt from taxation * * *
*313 “ (6) The real property of a corporation or association organised exclusively for * * * religious * * * purposes * * * and used exclusively for carrying out thereupon one or more of such purposes ”. (Italics ours.)
Accordingly, under the Tax Law taxable real property is expressly limited to nonexempt property and, for exemption, the statute sets down only two tests: (1) incorporation for one or more of the purposes listed in the act including “ religious * * * purposes and (2) use of the property “ exclusively for carrying out thereupon * * * such purposes ”. The words “ a corporation or association ”, in the act, are used without any qualifying phrase or limitation whatever except exclusive organization for the specified purposes (here religious) and the exclusive use of the property for such purposes. In the present case it is conceded that legal title was always in a corporation organized exclusively for religious purposes and the property was exclusively so used. The statute by its terms draws no distinction between foreign and domestic corporations. It is the use of the premises, the carrying out of the exempt purposes that is the basic test.
Defendant, however, and the Special Term, insert a qualifying and limiting term, not inserted by the Legislature, so that the statute is changed from reading as it does, “ a corporation or association ” to “ a [domestic] corporation ”. We think there is no warrant for thus materially changing and restricting the clear and unambiguous terms of the law.
The Tax Law provides a general exemption for classes of institutions which perform one or more of the services which by the settled public policy of the State of New York, since the time of its inception, are of such importance as to require or justify exemption by general law. This public policy, which is found not merely in the State of New York but generally through the United States, has existed from the inception of our government. To exempt such property from taxation is “ scarcely less the duty than the privilege of the enlightened legislator ” (Cooley on Taxation, § 724; People ex rel. Seminary v. Barber, 42 Hun 27, affd. 106 N. Y. 669; Matter of Huntington, 168 N. Y. 399). In practically all cases dealing with exemptions and by the decisions here controlling the courts have granted or denied exemption by applying express provisions of the statute to the facts as found (People ex rel. Church of St. Mary v. Feitner, 168 N. Y. 494). For a scholarly review of the public policy involved, the relevant statutes and court decisions, see also “ Charitable Exemption from Taxation in New York State *314 on Eeal and Personal Property ” by John Godfrey Saxe (Lincoln Engraving and Printing Corp., New York, 1933).
In his opinion herein, the learned Special Term said that his decision was “ unfortunate ” but he said there was “ no escape from the settled policy of the state ”. There is no “ settled policy ” that regardless of the wording of the statute, exemption shall .be denied if legal title happens to be in the name of a foreign religious corporation, at least, where as in this case the property has always been used here exclusively for religious purposes by a local congregation consisting of' inhabitants and citizens of New York City organized exclusively for such purpose's.
The cases which apparently guided Special Term to its reluctantly reached decision were not cases arising exclusively under the Tax Law relating to exemption of certain property from taxation, but were chiefly cases arising under entirely different laws, the prime purpose of which was to limit corporate powers of certain corporations organized for other than business purposes (Matter of Prime, 136 N. Y. 347; Matter of Balleis, 144 N. Y. 132).
The statute involved in the Prime case was not, as here, section 4 of the Tax Law exempting from taxation the property of religious, charitable and educational corporations and associations, but chapter 553 of the Laws of 1890, an act to limit the amount of property to be held by certain corporations organized for other than business purposes and exempting the personal estate of such corporations from certain taxation provisions. That act regulated and limited certain corporate powers. As the power of corporations to take and hold property is a corporate power granted by the State, the court held that the laws of this State cannot enlarge or change the powers of a foreign corporation; and, accordingly, held that the statute in question was not intended to apply to foreign corporations. In that connection only the court spoke of the power of visitation and control and said the policy of the State is to encourage benevolence and charity conducted or exercised in this State.
The statute there considered and the cases interpreting it are not here applicable. But it is significant to note that the court in its opinion said that it is the duty of the courts “ to declare the law as it is ”. (P. 362.) In the present case the law “ as it is ” contains none of the qualifying or limiting words defendant would incorporate.
Similarly, Matter of Bailéis arose, not under section 4 of the Tax Law, but under the provisions of chapter 399 of the *315 Laws of 1892 relating to taxable transfers of property then referred to in common parlance as the ‘ ‘ Collateral Inheritance Tax Law ’ ’. The court pointed out that the act there in question, like the prior act, discussed in the Prime case (L. 1890, ch. 553) was concerned with a grant of corporate privileges to domestic corporations and the Legislature must be deemed to have had in mind corporations that were the creations of this State. Both of these cases in which alone the so-called “ settled policy ” has its origin must be read in the light of the controlling consideration that the legislation there in question was primarily concerned with granting corporate powers with regard to the amount of property that the corporations in question could hold. As such matters would necessarily be restricted to domestic corporations, accordingly the exemption therein contained was similarly restricted by the court. Obviously such considerations do not apply at all to section 4 of the Tax Law which does not purport to give corporate powers to corporations with regard to the amount of property they may receive and hold. The law is exclusively concerned (§ 3) with property which is taxable, namely, nonexempt property, and section 4, with property declared by law to be exempt.
The city also relies on People ex rel. Andrews v. Cameron (140 App. Div. 76 [3d Dept.], affd. 200 N. Y. 584). But with regard to the real property there involved, the Third Department expressly pointed out that it had not “ at any time been used exclusively * * * for carrying out thereupon any of the purposes specified by the statute as necessary in order to exempt it from taxation, and hence the assessment thereof was proper.” (P. 80.) In this case the exact opposite is conceded to be true and as to real property, the only property here in question, that case is not an authority supporting the city’s contentions. The personal property there involved was bequeathed to a foreign educational corporation, no part of whose activities was carried on by the corporation in the State of New York. The court, following the Prime ease, held that the transfer was not exempt as the corporation’s charitable and educational activities were not here conducted. Any issue as to whether the personal property involved was here used exclusively by a local association affiliated with the foreign educational corporation was not presented or considered.
The only case applying the Prime case rule to a tax on real estate is People ex rel. Corporation etc., v. Purdy (184 App. Div. 915 [2d Dept., 1918]). That case involved real property pur *316 chased in New York by the Mormon Church of Utah. The court in its memorandum decision decided the case on the authority of the Prime, Bailéis and Andrews cases without consideration of the distinctions hereinabove pointed out. That authority is not here controlling, especially in the light of subsequent hereinafter-mentioned decisions of this court and the Court of Appeals.
Such later controlling authorities, specifically relating to exemption from real estate taxes, enforce the rule that where the exemption in the statute is express, as it here is, an institution within the exemption is mandatorily exempt and the courts may not insert qualifying clauses or add conditions not contained in the act, and where the institution comes within the express language of the statute assessors in making an assessment are without jurisdiction and act illegally and not merely erroneously (Williams v. Board of Supervisors, 78 N. Y. 561; People ex rel. Erie R. R. v. Tax Comm., 246 N. Y. 322, 326; People ex rel. Trustees Masonic Hall, etc., v. Miller, 253 App. Div. 672 [1938], revd. 279 N. Y. 137; People ex rel. Doctors Hospital v. Sexton, 267 App. Div. 736, affd. 295 N. Y. 553).
In the Masonic Hall case (supra) this court reversed a final order of Trial Term that vacated an assessment upon the real property of a fraternal organization leased for commercial purposes in the city of New York in competition with other owners of real estate. The income derived was used to support a home or asylum of the fraternal order at Utica, New York, which was also exempt from taxation under section 4 of the Tax Law. As the real estate was used for commercial purposes producing income in competition with other owners of real estate, we ruled that such double indemnity from taxation was not ordinarily accorded and held the property taxable. The Court of Appeals unanimously reversed this court and reinstated the exemption order of Trial Term (279 N. Y. 137,141). In its opinion that court pointed out that the appellant was a fraternal corporation and as such came “ squarely within the intent ” of the language of the statute (Tax Law, § 4, subd. 6) providing that “ the real property of any fraternal corporation ” used to maintain a building for meetings “ the entire net income ” of which “ is exclusively * * * used ” to maintain a free asylum “ shall he exempt from taxation ” (italics as in the Court of Appeals opinion). The court pointed out that the particular statute there in question did not require that the real property of a fraternal organization be used exclusively for fraternal purposes and as the net income was applied to the use specified in the statute, the exemption was mandatory.
*317 In the Doctors Hospital case (267 App. Div. 736, supra), Special Term had confirmed assessments on the real property of “ a hospital ” in the city of New York essentially on the ground that sufficient free care service to the poor was not shown to entitle the hospital to the statutory exemption. In reversing Special Term’s order and granting the hospital’s application for exemption this court, in an opinion of Justice Cohn (p. 740) in which the entire bench concurred, said of the city’s limitation clause: “ The statute makes no such requirement. The term 1 hospital ’ in the law quoted is employed therein without any limitation whatever. If it were the intention of the Legislature to require hospitals to furnish free service to the needy as a condition precedent to tax exemption, appropriate language to that effect could readily have been employed. ‘ We are not privileged, by judicial construction, to legislate. If a change in the wording of the provision is desired, it must be made by the Legislature.’ (Matter of Metropolitan Life Ins. Co. v. Boland, 281 N. Y. 357, 361.) ”
In the Doctors Hospital case this court further said (p. 741): ‘ ‘ Hospitals which are devoted to the care of the sick and injured, which aid in maintaining public health and which make valuable contributions to the advancement of medical science are rightly regarded as benevolent and charitable. A hospital association not conducted for profit which devotes all of its funds exclusively to the maintenance of the institution is a public charity and this is so irrespective of whether patients are required to pay for the services rendered. (Butterworth v. Keeler, 219 N. Y. 446, 449; Matter of Mendelsohn, 262 App. Div. 605, 610; Jewish Mental Health Soc. v. Vil. of Hastmgs-on-Hudson, 255 App. Div. 77, affd. 279 N. Y. 764.) The public policy for tax exemption of the property of institutions carrying on religious, educational, scientific, hospital, charitable and kindred purposes as expressed in the Tax Law has been consistently upheld by the courts of this State. (Matter of Huntington, 168 N. Y. 399, supra; People ex rel. Bleakley v. Sexton, 265 N. Y. 480; People ex rel. Y. M. C. A. v. Miller, 278 N. Y. 651; People ex rel. Christodora House v. Miller, 278 N. Y. 652; Amherst College v. Ritch, 151 N. Y. 282, 334.) ” The Court of Appeals unanimously affirmed the determination of this court (295 N. Y. 553, supra).
In the Masonic Hall case (253 App. Div. 672, revd. 279 N. Y. 137, supra) this court was reversed by the Court of Appeals because it did not follow without qualification the language of the exempting statute. In the Doctors *318 Hospital case (267 App. Div. 736, affd. 295 N. Y. 553) this court was unanimously affirmed by the Court of Appeals when it enforced the law as written and struck out limitations not contained in the act. These decisions, the most recent of this court and the Court of Appeals, are controlling on our decision in this case and require reversal of the order appealed from. In those cases the statute referred to “ any fraternal corporation ” and “ a hospital ” and was enforced according to its terms. In this case the statute contains the relevant words ‘1 a corporation or association ”, similarly with no limitation or modification and it should be enforced accordingly. To permit the city’s assessing authorities to add qualifying or limiting terms to a mandatory statute that is clear and unambiguous would make meaningless the public policy of the State requiring tax exemption to be determined “ by law ” (Tax Law, § 3).
To realize what is the true settled policy of the State it should be noted that by chapter 732 of the Laws of 1911 (Tax Law, § 221) with regard to exemptions on property devised or bequeathed for religious and charitable purposes, the Legislature added after the word “ corporation ” the words “ wherever incorporated ”. These words appear to have been added to eliminate any confusion resulting from the Prime and Bailéis decisions. No such amendment was necessary for section 4 of the Tax Law as no such construction was placed thereon by the Court of Appeals. It would indeed be an anomalous and strange public policy to exempt all foreign religious and charitable corporations from transfer and inheritance taxes even though they do not exercise in this community their beneficent purposes, while at the same time subjecting their real estate here to taxation, although it is actually used in this community exclusively for an exempt purpose.
The property here sought to be taxed was church property used exclusively for religious purposes by a New York City religious association organized exclusively for such purposes and clearly came within the letter and spirit of subdivision 6 of section 4 of the Tax Law.
The judgment appealed from should be reversed, with costs to appellant and judgment should be entered canceling the taxes involved and releasing the premises from any charge, lien or claim in respect thereto, and removing the cloud on title caused by said taxes.
Peck, P. J., Cohn, Van Voorhis and Shientag, JJ., concur.
*319 Judgment unanimously reversed, with costs to the appellant and judgment directed to he entered canceling the taxes involved and releasing the premises from any charge, lien or claim in respect thereto, and removing the cloud on title caused by said taxes. Settle order on notice.